645 So.2d 544 (1994)
Bonnie ARCHER, Appellant,
v.
Ronald A. MADDUX, M.D., and Ronald A. Maddux, M.D., P.A., Appellees.
No. 93-689.
District Court of Appeal of Florida, First District.
November 14, 1994.
Richard P. Warfield of Warfield & Associates, P.A., Pensacola, for appellant.
Danny L. Kepner and John E. Wimberly, Jr., of Shell, Fleming, Davis & Menge, Pensacola, for appellees.
BENTON, Judge.
Bonnie Archer appeals the judgment dismissing her medical malpractice complaint for failure to furnish prospective (later actual) defendants a corroborating, verified medical expert opinion, until well after the statute of limitations had run, and until after the deadline the circuit judge had set. Despite the timely filing of her notice of intent to initiate litigation and of the complaint itself, we affirm.
Ms. Archer filed a notice of intent to initiate litigation pro se on December 21, 1989, a little less than a year before the two-year statute of limitations ran, section 95.11(4)(b), Florida Statutes (1993), and more than ninety days before the original medical malpractice complaint was filed (by Archer's counsel) on November 8, 1990. The complaint alleged that Dr. Maddux had permitted a portion of a tube to remain inside Ms. Archer after surgery:

*545 [T]he defendant negligently performed his professional services by permitting a foreign object to-wit; a portion of a tube, to remain in the incision after the operation was performed, and by failing to properly manage and control the follow up care given to the plaintiff which continued through to-wit: November 18, 1988, at or about which time the plaintiff learned that the cause of her continuing problems was the fact that the foregoing body was left in the incision made by the said defendant.
The complaint went on to allege that Ms. Archer suffered permanent physical and mental injury as a result. But the complaint did not allege (because it could not) that any corroborating, verified medical expert opinion was provided to the defendants, either along with the notice of intent to initiate litigation, or at any other time before the two years allowed by the statute of limitations had run.
Maddux filed a motion to dismiss the original complaint on grounds, inter alia, that no verified medical expert opinion had been furnished. On January 14, 1991, before the motion to dismiss was ruled on, Archer filed an amended complaint. On February 21, 1991, the trial court dismissed the complaint without prejudice, citing the lack of a verified medical expert opinion.
On July 16, 1992, the trial court entered its "Order Denying the Defendants' Motions to Dismiss for Failure to Prosecute and for a Protective Order," and directed Archer to file a second amended complaint within ten days. With entry of this order, any uncertainty concerning whether the order of February 21, 1991 was intended to dismiss the (first) amended complaint along with the original complaint was laid to rest. On August 24, 1992, Archer filed a second amended complaint alleging compliance with the notice requirements of section 766.106(2), and attached both a corroborating, verified medical expert opinion and an amended notice of intent. This appeal is taken from the judgment dismissing the second amended complaint.

Presuit Investigation
As part of a statutory scheme in place since earlier the same year Ms. Archer alleged she first went to Dr. Maddux, certain requirements pertain, with regard to "[p]resuit investigation of medical negligence claims and defenses by prospective parties":
(2) Prior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
(3) Prior to issuing its response to the claimant's notice of intent to initiate litigation, during the time period for response authorized pursuant to s. 766.106, the defendant or the defendant's insurer or selfinsurer shall conduct an investigation to ascertain whether there are reasonable grounds to believe that:
(a) The defendant was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of lack of reasonable grounds for medical negligence litigation shall be provided with any response rejecting the claim by the defendant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the response rejecting the claim is mailed, which statement shall corroborate reasonable grounds for lack of negligent injury sufficient to support the response denying negligent injury.
*546 § 766.203, Fla. Stat. (1993). These provisions were enacted to establish "a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Williams v. Campagnulo, 588 So.2d 982, 983 (Fla. 1991); see Ingersoll v. Hoffman, 589 So.2d 223 (Fla. 1991); Duffy v. Brooker, 614 So.2d 539 (Fla. 1st DCA 1993) review denied sub nom. Physicians Protective Trust Fund v. Brooker, 624 So.2d 267 (Fla. 1993); Chandler v. Novak, 596 So.2d 749 (Fla. 3d DCA 1992); Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA 1992), review denied, Mussallem v. Stebilla, 604 So.2d 487 (Fla. 1992).
The medical negligence statutory "provisions were not intended to ... deny parties access to the court on the basis of technicalities." Wilkinson v. Golden, 630 So.2d 1238, 1239 (Fla. 2d DCA 1994), citing Ragoonanan v. Associates in Obstetrics, 619 So.2d 482, 484 (Fla. 2d DCA 1993); see Patry v. Capps, 633 So.2d 9 (Fla. 1994). On the other hand, the "presuit notice and screening requirements ... represent more than mere technicalities. The legislature has established a comprehensive procedure designed to facilitate the amicable resolution of medical malpractice claims." Ingersoll, 589 So.2d at 224. Another important purpose is to dispose of claims devoid of merit without the necessity of a full adversarial proceeding.

Corroboration Required
Ms. Archer first argues that the (initial) omission of a corroborating medical opinion was immaterial because the complaint alleged sufficient facts to give rise to a presumption of negligence under section 766.102(4), Florida Statutes (1993), which provides:
The existence of a medical injury shall not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care by the health care provider. However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination, or diagnostic procedures shall be prima facie evidence of negligence on the part of the health care provider.
She maintains that section 766.203(2)(b), Florida Statutes (1993), does not require a written medical expert opinion as support for plaintiff's claim here, because the legislature has already determined that the defendant's alleged conduct is negligence per se.
We find no such exception to the statutory requirement that medical malpractice claims be corroborated by verified, written medical opinions. The statute calls for medical corroboration not only of negligence but also of injury in consequence. Even on appellant's res ipsa loquitur theory  which we reject, as inapplicable to presuit investigation requirements  medical opinion is presumably a necessary predicate to show that a foreign body has indeed been left at a surgical site. Without this predicate and without corroboration that "[s]uch negligence resulted in injury to the claimant," section 766.203(2)(b), Florida Statutes (1993), the statutory requirements have not been met.
Ms. Archer also contends that Dr. Maddux waived any objection to her failure to comply with statutory requirements when his insurance company undertook a presuit investigation of her claim, after receiving her pro se notice of intent. We do not believe the defendants' own investigation, presumably conducted in a good faith effort to comply with section 766.106(3), Florida Statutes (1993), can fairly be construed as a waiver of their right to a corroborating medical opinion. If Ms. Archer's timely-filed notice of intent to litigate fulfilled a purpose of the presuit requirements by giving Dr. Maddux sufficient notice to evaluate Archer's claim with an eye toward disposition out of court, so much the better.
But this does not excuse the lack of a verified written medical expert opinion. "There are disparate purposes underlying the requirement of serving a notice of intent to sue and the requirement of providing a verified written medical expert opinion corroborating reasonable grounds to support a claim of medical negligence." Stebilla, 595 So.2d at 139. One clear purpose of requiring *547 corroboration is to spare all parties (not to mention the judiciary) the time and expense of litigating spurious claims. The expert opinion requirement is designed "to prevent the filing of baseless litigation ... [and] to corroborate that the claim is legitimate." Stebilla, 595 So.2d at 139. No party should be called on to defend at trial against allegations no competent witness can be found to support.

Corroboration Untimely
If a complaint is filed without a corroborating expert opinion, the defendant's proper remedy is a motion to dismiss. The statute calls for an expert's opinion before the notice of intent is mailed. Although the statute directs that the expert's opinion accompany the notice of intent, the "failure to provide simultaneously the presuit notice and the corroborating opinion," Gargano v. Costarella, 618 So.2d 786, 787 (Fla. 5th DCA 1993), has been held not to require dismissal, if the requisite corroboration is furnished after the notice but before the statute of limitations has run. Id.
Its recent vintage notwithstanding, the view that "[t]he claimant's failure to produce the corroborating medical expert opinion prior to the running of the statute of limitations will not result in dismissal of the complaint as a matter of law," Duffy, 614 So.2d at 539 n. 2, citing Stebilla, has been unequivocally disavowed. Shands Teaching Hospital v. Miller, 642 So.2d 48 (Fla. 1st DCA 1994). The "failure to provide a corroborating medical expert opinion with the notice of intent to initiate a medical malpractice action ... is fatal if the limitations period has run." Id. It is also clear that "willful noncompliance with the presuit screening process can ... result in dismissal." Hospital Corp. of America v. Lindberg, 571 So.2d 446, 449 (Fla. 1990).
Here the plaintiff did not file a corroborating medical expert opinion until after the statute of limitations had run. On that account, whatever the reason for the delay, pursuit of her claim is now foreclosed under Shands. The judgment below was entered on grounds no written medical opinion had been procured before the statute of limitations ran. Although not relied on by the trial court, the failure to meet the time limit imposed by the court is an independently sufficient ground to affirm refusal to allow a tardy filing. For that reason, this case does not present the constitutional question concerning access to courts that the statute, considered alone, might pose. See Art. I, § 21, Fla. Const.
AFFIRMED.
LAWRENCE, J., and SMITH, Senior Judge, concur.