697 So.2d 575 (1997)
FORT WALTON BEACH MEDICAL CENTER, INC., and Robert D. Siwicki, individually, and Robert D. Siwicki, P.A., Petitioners,
v.
Tony M. DINGLER and Staci L. Dingler, husband and wife, Respondents.
Nos. 97-934, 97-937.
District Court of Appeal of Florida, First District.
August 5, 1997.
*576 Frank C. Bozeman, Jr. of Bozeman, Jenkins & Matthews, P.A., and Ann J. Tipton of Lozier, Tipton, Tipton & Thames, Pensacola, for Petitioner Fort Walton Beach Medical Center, Inc.
A.G. Condon, Jr. of Emmanuel, Sheppard & Condon, Pensacola, for Petitioners Robert D. Siwicki & Robert D. Siwicki, P.A.
Gillis E. Powell, Jr. of Powell, Powell & Powell, Crestview, and Stanley Bruce Powell, P.A., Niceville, for Respondents.
VAN NORTWICK, Judge.
In this consolidated proceeding, Fort Walton Beach Medical Center, Inc., Robert D. Siwicki, D.P.M., individually, and Robert D. Siwicki, P.A., petition for writ of certiorari to review an order denying petitioners' motions which sought dismissal of the medical malpractice *577 action filed by Tony M. Dingler and Staci L. Dingler, respondents. Petitioners argue that the trial court departed from the essential requirements of law in refusing to dismiss the instant action because respondents' corroborating expert lacked the qualifications required by section 766.202(5), Florida Statutes (1991), and respondents failed to remedy such defect within the applicable statute of limitations. Because we conclude that the trial court did not depart from the essential requirements of law in ruling that the corroborating expert's qualifications satisfied section 766.202(5), we deny the petition.

I
On February 25, 1991, petitioner Robert D. Siwicki, a podiatrist, performed surgery on the right foot of respondent, Staci Dingler, at the petitioner hospital, Fort Walton Beach Medical Center. Following the surgery, Mrs. Dingler developed a lesion on her right calf which Siwicki suggested in his notes might have been caused by Betadine solution seeping under the pneumatic tourniquet placed on Mrs. Dingler's leg during surgery. Scar tissue from the healed lesion was later excised from Mrs. Dingler's calf resulting in a less than satisfactory cosmetic appearance of her calf.
Respondents served an initial and amended notice of intent to initiate litigation against petitioners in March 1993 and April 1993, respectively. Those notices stated that Siwicki had been negligent during Mrs. Dingler's surgery and that his negligence, together with the hospital's negligence, caused or allowed Betadine solution to chemically burn her right calf causing permanent scarring. The notices were accompanied by corroborating opinions and affidavits from Elliott Bernard Oppenheim, M.D.
Dr. Oppenheim's curriculum vitae was incorporated into his affidavits. It shows that he was board certified in family practice; completed his surgical internship at Providence Medical Center and surgical residency at the University of British Columbia; and has undertaken specialized surgical clerkships at Oxford University, Peter Brent Brigham Hospital and Stanford University. According to his curriculum vitae, Dr. Oppenheim, who had been licensed to practice medicine in the State of Washington, ceased the regular practice of medicine in June 1992 to attend law school and has not been licensed to practice medicine in any jurisdiction since December 1992. Dr. Oppenheim's first affidavit stated that he considers himself a "medical expert" as defined by section 766.202(5), Florida Statutes (1991). His second affidavit stated that he considered himself a "medical expert" as defined by section 766.102(2)(c)2., Florida Statutes (1991).
Respondents filed their complaint against petitioners in December 1993, alleging that both petitioners were medically negligent in the manner described in their presuit notices. In their answers, each petitioner raised as an affirmative defense that respondents had failed to corroborate their claim as required by section 766.203(3), Florida Statutes (1991), because Dr. Oppenheim, their corroborating expert, was not duly and regularly engaged in the practice of his profession at the time his investigation was undertaken and affidavit filed as required by section 766.202(5).
Subsequently, petitioners filed motions seeking dismissal of this action arguing that Dr. Oppenheim's affidavits could not constitute corroboration of respondents' claims as contemplated by the presuit investigation since the affidavits showed that he was not qualified as a "medical expert" as defined in section 766.202(5), Florida Statutes (1991). Following extensive briefing of the issues by the parties and a hearing, the trial court denied the petitioners various motions, citing Kukral v. Mekras, 679 So.2d 278 (Fla.1996).

II
Section 766.104(1), Florida Statutes (1991), provides that "[n]o action shall be filed for personal injury or wrongful death arising out of medical negligence ... unless the attorney filing the action has made a reasonable investigation... to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." This statute provides a safe harbor for the attorney's good faith determination in that "good faith may be shown to exist if the claimant or his counsel has received *578 a written opinion ... of an expert as defined in s. 766.102 that there appears to be evidence of medical negligence."
Section 766.102, Florida Statutes (1991), among other things, sets forth the qualifications of the "health care provider" who may testify as an expert in a medical negligence action, and who, pursuant to section 766.104(1), may provide an opinion supporting the attorney's good faith presuit belief that there has been medical negligence. As relevant to the instant action, subparagraph 766.102(2)(c)2. provides that, "[a]ny health care provider may testify as an expert in any action" even though the proposed expert witness does not meet the standards for a "similar health care provider" under subsections 766.102(2)(a) and (b) if such person:
to the satisfaction of the court, possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience, or knowledge must be as a result of the active involvement in the practice or teaching of medicine within the 5-year period before the incident giving rise to the claim.
Sections 766.201 through 766.206 set forth more detailed requirements for the presuit investigation and notice. Relevant to the instant action, section 766.202(4) requires the claimant's attorney to consult with and obtain an opinion from a medical expert. Further, section 766.203(2) requires that prior to the claimant issuing the notice of intent to initiate medical malpractice litigation pursuant to section 766.106, the claimant's presuit investigation must ascertain that there are reasonable grounds to believe that the proposed defendants were negligent in the care or treatment of the claimant and that such negligence resulted in injury to the claimant. Paragraph (2)(b) requires:
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
Section 766.202(5) defines "medical expert" in a manner which provides two alternative bases for a person to qualify to render a medical expert opinion under section 766.203(2)(b). A "medical expert" under the statute must be either

a person duly and regularly engaged in the practice of his profession who holds a health care professional degree from a university or college and has had special professional training and experience or one possessed of special health care knowledge or skill about the subject upon which he is called to testify or provide an opinion. § 766.202(5), Fla. Stat. (1991)(emphasis added).

III
Petitioners argue that respondents failed to comply with the requirements of section 766.203(2) to obtain from a medical expert, as defined in section 766.202(5), a verified written medical opinion corroborating reasonable grounds to believe that petitioners were negligent in their care or treatment of the claimant. Specifically, they contend that Dr. Oppenheim does not meet the definition of a medical expert in section 766.202(5) because, at the time he signed his initial and amended affidavits, he was not "duly and regularly engaged in the practice of his profession."
In response, the respondents argue that Dr. Oppenheim was qualified under section 766.102(2)(c)2. to give an opinion. They note that Florida courts have made a distinction between the qualifications of a presuit investigation medical expert under section 766.202(5) and the qualifications of the expert who will be permitted to testify at a subsequent malpractice trial under section 766.102. Faber v. Wrobel, 673 So.2d 871, 872-73 (Fla. 2d DCA 1995), rev. denied, Huddleston v. Faber, 675 So.2d 927 (Fla.1996), Pena v. Faber, 675 So.2d 928 (Fla.1996), and Wrobel v. Faber, 675 So.2d 931 (Fla.1996); Maldonado v. EMSA Ltd. Partnership, 645 So.2d 86, 88 (Fla. 3d DCA 1994). Respondents contend that those cases hold that section 766.202(5) *579 provides a less stringent standard for the qualifications of a presuit investigation medical expert than the standard for admitting expert testimony at trial. Since their expert clearly met the requirements to testify at trial, they assert it would be ludicrous to rule that he cannot give an opinion for purposes of section 766.203(2).

IV
In our interpretation of the statutes before us, we are, of course, guided by legislative intent. This court has recognized in Shands Teaching Hosp. and Clinics, Inc. v. Barber, 638 So.2d 570, 572 (Fla. 1st DCA 1994), that the purpose of the presuit notice of intent under chapter 766 is to give the defendants notice of the incident in order to allow investigation of the matter and promote presuit settlement of the claim, and that the expert corroborative opinion is designed to prevent the filing of base-less litigation. Thus, while it is true that the presuit requirements are conditions precedent to a malpractice suit, the provisions of the statute were not intended to deny access to the courts on the basis of technicalities. Archer v. Maddux, 645 So.2d 544, 546 (Fla. 1st DCA 1994). Instead, the presuit notice and screening statute should be construed in a manner that favors access to courts. Patry v. Capps, 633 So.2d 9, 13 (Fla.1994). Thus, as the supreme court recognized in Kukral v. Mekras, 679 So.2d at 284, in undertaking to construe these statutes, we begin
with the proposition that the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses.
In interpreting these statutes, at the outset we point out that petitioners have misread section 766.202(5). They argue that this section provides a single set of qualifications that must be met by any "medical expert" who provides a presuit corroborating opinion. In section 766.202(5), however, the legislature has clearly provided for two alternative means for qualifying a "medical expert." The statute speaks in the disjunctive.[1] It begins by providing that to qualify under section 766.202(5) a "medical expert" must be "a person duly and regularly engaged in the practice of his profession who holds a health care professional degree from a university or college and has had professional training and experience." The statute then sets forth an alternative qualification by the use of the disjunctive article "or" followed by the noun "one," which can only, grammatically and logically in the context of section 766.102(5), be read in parallel construction with the noun "person." To satisfy this alternative qualification, the expert must be "possessed of special health care knowledge or skill about the subject upon which he is called to testify or provide an opinion."
We agree with the trial court below that Dr. Oppenheim clearly meets this latter qualification for a "medical expert" under section 766.202(5). Dr. Oppenheim is a board certified physician who was practicing medicine when the alleged malpractice occurred. Although he is not a podiatrist, his curriculum vitae indicates considerable surgical training and experience, and it is the petitioners' surgical procedure which is at issue in this case. Since the issue here is whether appropriate surgical procedures were utilized, and the trial court could conclude based upon the evidence that Dr. Oppenheim was qualified to offer an opinion on appropriate surgical procedures, the petitioners' arguments must fail.
Even if we limit our examination of the definition of "medical expert" to the first alternative provided by section 766.202(5), the petitioners' arguments are without merit. That alternative requires in part that the proposed medical expert be "a person duly and regularly engaged in the practice of his profession." The petitioners contend this requirement must be met at the time the corroborating opinion and affidavit are signed.
*580 Our task here is made more complex because chapter 766 appears to adopt two different standards for the qualifications of a "medical expert" who may issue an opinion corroborating a claimant's presuit investigationthe standard set forth in section 766.102(2)(c)2, as allowed by section 766.104(1), and that the standard set forth in section 766.202(5).[2] Nonetheless, as applied in the instant case, the standards in both sections 766.202(5) and 766.102(2)(c)2 seek to achieve the same legislative intent. Both statutes are intended to assure that the presuit investigation expert has sufficiently current knowledge of "the prevailing professional standard of care in a given field of medicine," section 766.102(2)(c)2, Florida Statutes (1991), such that the corroborating opinion can form a reasonable basis to support a claim of medical negligence. See generally Archer v. Maddux, 645 So.2d at 546-47.
We conclude that the rule of interpretation of these statutes mandated by the supreme court in Kukral and the legislative intent of these two provisions are best satisfied by interpreting these standards for a presuit investigation medical expert in a consistent manner. Thus, we reject petitioners' argument that, to qualify as an expert under section 766.202(5), a medical expert must be "regularly engaged in the practice of his profession" at the time the corroborating opinion and affidavit are signed. We believe it is logical that the legislature intended the more specific time period in section 766.102(2)(c)2 to define when the proposed expert must have been "engaged in the practice" under section 766.202(5). Thus, an expert satisfies the section 766.202(5) requirement of engagement in the practice so long as the expert's "active involvement" in the practice occurred "within the five-year period before the incident giving rise to the claim," as provided by section 766.102(2)(c)2.
Here, Dr. Oppenheim meets each of the alternative requirements for qualification as a "medical expert" under section 766.202(5). His opinion, therefore, satisfies the requirements of both sections 766.102(2)(c)2. and 766.202(5). Accordingly, the trial court did not depart from the essential requirements of law in denying the petitioners' motions.
PETITION DENIED.
JOANOS, J., concurs.
WOLF, J., specially concurs with written opinion.
WOLF, Judge, specially concurring.
While I do not agree with the majority that we should engraft the definition of expert in section 766.102(2)(c)2, Florida Statutes, onto the definition of expert contained in section 766.202(5), Florida Statutes, in light of the ambiguous wording of section 766.202(5), Florida Statutes, I agree with the alternative reason for denying the petition.
NOTES
[1] "In its elementary sense, the word `or,' as used in a statute, is a disjunctive article indicating an alternative." TEDC/Shell City, Inc. v. Robbins, 690 So.2d 1323, 1325 at fn. 4 (Fla. 3d DCA 199) (quoting 49 Fla.Jur.2d, Statutes § 137 at 179 (1984)).
[2] Other courts have also commented upon the imprecise language in chapter 766, Florida Statutes. See, e.g., Catron v. Roger Bohn, D.C., P.A., 580 So.2d 814, 817 (Fla. 2d DCA 1991) ("[S]ection 766.102 and many other sections of chapter 766 are appalling in their lack of definition of critical terms and in their total lack of consistency in the manner of use and apparent meaning of those critical ... terms.").