769 So.2d 410 (2000)
Arturo PAVOLINI and Stephanie Pavolini, Appellants,
v.
Eugenio F. BIRD, M.D., and Eugenio F. Bird, M.D., P.A., et al., Appellees.
No. 5D99-2640.
District Court of Appeal of Florida, Fifth District.
August 30, 2000.
Rehearing Denied October 13, 2000.
Earl L. Denney, Jr. of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, and Barbara J. Compiani of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellants.
Rafael E. Martinez and Juan A. Ruiz of McEwan, Martinez, Luff, Dukes & Ruffier, P.A., Orlando, for Appellees Eugenio Bird, M.D. and Eugenio Bird, M.D., P.A.
Francis E. Pierce, III and David B. Falstad of Gurney & Handley, P.A., Orlando, and Richard L. Allen, Jr. and Brian Wagner of Mateer & Harbert, P.A., Orlando, for Appellees Henry J. Comiter, M.D., Henry J. Comiter, M.D., P.A., and Orlando Regional Healthcare System.
Martin B. Unger and Lee W. Marcus of Unger, Webster, Swartwood & Acree, P.A., Orlando, for Appellees Manuel J. Galceran, M.D. and Galceran & Meyer, M.D., P.A.
*411 Debra B. Potter of Haliczer, Pettis & White, Ft. Lauderdale, for Appellee Columbia Park Medical Center.
Hector A. More' and Benjamin W. Newman of Grower, Ketcham, More', Rutherford, Noecker, Bronson, Siboni & Eide, P.A., Orlando, for Appellees Michael J. Creamer, D.O., and Michael J. Creamer, D.O., P.A.
Christopher C. Curry and Robert A. Hannah of Hannah, Estes & Ingram, P.A., Orlando, for Appellees Patricia L. Maclay, M.D. and Patricia L. Maclay, M.D., P.A.
SAWAYA, J.
The appellants, Arturo and Stephanie Pavolini, appeal the trial court's order of dismissal of their derivative claims in the underlying medical malpractice action filed by Maria Pavolini, Arturo's wife and Stephanie's mother. The order of dismissal is based on the failure of the appellants to give separate notice pursuant to section 766.106(2), Florida Statutes (1999) of their intent to join in the action to litigate their derivative claims for loss of consortium.[1] We reverse.
The issue in this case is whether an individual who seeks to pursue a derivative claim for loss of consortium in a medical malpractice action must either provide notice of intent to initiate litigation pursuant to section 766.106, Florida Statutes, or join in the notice provided by the injured party.
This issue was addressed by the court in Chandler v. Novak, 596 So.2d 749 (Fla. 3d DCA 1992), wherein an injured spouse properly provided notice to the medical care provider of his intention to initiate a medical malpractice suit pursuant to section 768.57, Florida Statutes (1987),[2] but did not include the derivative claim of his wife for loss of consortium in the notice. The court reversed summary judgment in favor of the medical care provider on the derivative claim finding that the spouse with the derivative claim was not required to provide separate notice under the statute or join in the notice provided by her injured husband. The court reasoned that a derivative action is not a separate and distinct action, but is completely dependent upon the injured spouse establishing a cause of action against the medical care provider. The court also found that the notice provided by the injured spouse was sufficient to make the defendant aware of all the facts concerning the medical malpractice claim upon which the derivative claim is dependent and that there was no showing of prejudice by the lack of a separate notice regarding the derivative claim.
The appellees in the instant case argue that the better-reasoned approach to derivative claims was adopted by the court in Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), rev. denied, 531 So.2d 1354 (Fla.1988), which involved a suit against a governmental entity based on the waiver of sovereign immunity provisions of section 768.28, Florida Statutes. In Piper, the court held that a party with a derivative claim for loss of consortium was required to give separate notice or join in the notice provided by the injured spouse pursuant to section 768.28(6), Florida Statutes, which is part of the overall statutory scheme that makes provision of waiver of sovereign immunity for liability for torts. The court in Chandler noted that its decision may conflict with the decision in Piper.
*412 The Florida Supreme Court in Metropolitan Dade County v. Reyes, 688 So.2d 311 (Fla.1996), refused to find a conflict in the decisions of Chandler and Piper. In Reyes, the supreme court held that in sovereign immunity cases, strict construction of the statutory provisions of section 768.28(6) requires that a spouse with a derivative claim for loss of consortium give a separate or distinct notice of the derivative claim. Important to the resolution of the issue in the instant case, however, is the supreme court's discussion of the decision in Chandler. The supreme court quoted pertinent provisions of the decision in Chandler that discussed the reasons why a separate or distinct notice of a derivative claim in a medical malpractice claim was not required and stated:
We need not disapprove the Chandler decision because it involved a different statute. We note that the statute requiring notice in the Chandler case did not waive sovereign immunity and, therefore, was not subject to the same type of construction as we must accord section 768.28(6)(a).
688 So.2d at 313.
We agree that the unique provisions of the pre-suit notice and investigation requirements of the Medical Malpractice Act (Act) which are not contained in the waiver of sovereign immunity statute clearly distinguish the decisions in Piper and Chandler and distinguish the notice requirement under the Act from the notice requirement under the waiver of sovereign immunity statute. The courts require that a statute granting a waiver of sovereign immunity which provides a legal remedy where none existed under the common law must be strictly construed. See Reyes; Morhaim v. State, Dep't. of Transp., 737 So.2d 1234 (Fla. 3d DCA 1999), rev. denied, 751 So.2d 1252 (Fla.2000). In sharp contrast, the courts liberally construe the Act "so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses." Kukral v. Mekras, 679 So.2d 278, 284 (Fla. 1996); see Musculoskeletal Inst. Chartered v. Parham, 745 So.2d 946 (Fla.1999); Fort Walton Beach Med. Ctr., Inc. v. Dingler, 697 So.2d 575 (Fla. 1st DCA 1997). In particular, the courts have held that the pre-suit notice and screening requirements are "not intended to deny access to the courts on the basis of technicalities." Dingler, 697 So.2d at 579 (citing Archer v. Maddux, 645 So.2d 544, 546 (Fla. 1st DCA 1994)). "Instead, the presuit notice and screening statute should be construed in a manner that favors access to courts." Id. (citing Patry v. Capps, 633 So.2d 9, 13 (Fla.1994)).
The notice requirement under the Act is inextricably intertwined into the fabric of an overall statutory scheme designed to weed out meritless medical malpractice claims and promote the prompt resolution of valid claims. The Legislature expressed its intent to "provide a plan for prompt resolution of medical negligence claims," which plan consists "of two separate components, presuit investigation and arbitration." § 766.201(2), Fla. Stat. (1999). Pre-suit investigation is mandatory while arbitration is voluntary.[3] Thus the notice provision cannot be considered in isolation because appended to the pre-suit notice requirement are the pre-suit investigation requirements contained in section 766.203, Florida Statutes.
The requirements of pre-suit investigation apply to "all medical negligence" claims and defenses. § 766.203(1), Fla. Stat. (1999). Thus we must first determine whether a person with a derivative claim for loss of consortium is a claimant under the Act who presents a claim for *413 medical negligence. The pre-suit investigation statute provides that "[p]rior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that: (a) [a]ny named defendant in the litigation was negligent in the care and treatment of the claimant; and (b), [s]uch negligence resulted in injury to the claimant." § 766.203(2)(a),(b), Fla. Stat. (1999) (emphasis supplied). A claimant under the Act is defined as "any person who has a cause of action arising from medical negligence." § 766.202(1), Fla. Stat. (1999). The Act further provides in section 766.104(1), Florida Statutes, that:
No action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate of counsel that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant.
(Emphasis supplied).
When these statutory provisions are considered with the other provisions of the Act relating to pre-suit notice and investigation, it becomes apparent that to be a claimant under the Act, the person presenting the claim must have received negligent medical care and treatment from a medical care provider that resulted in the person's injury or death. See § 766.203(2), Fla. Stat. (1999) (providing that a claimant under the Act has a cause of action for medical malpractice if that cause of action is based on "negligent ... care or treatment of the claimant" that "resulted in injury to the claimant"). If the person making the claim did not receive negligent medical care or treatment, the person does not qualify as a claimant under the Act by definition and hence cannot be required to comply with the presuit notice and investigation requirements of the Act.[4] Accordingly, because a spouse or minor child who seeks damages for loss of consortium was not the recipient of negligent medical care and treatment from a medical care provider, the spouse or minor child is not required to comply with the pre-suit notice and investigation requirements.
Our conclusion is bolstered by the fact that it would be impossible for a person with a derivative claim for loss of consortium to comply with the pre-suit notice requirements of the Act. At the time the notice of intent is mailed, the claimant must submit a verified written medical expert *414 opinion from a medical expert qualified under the Act, "which statement shall corroborate reasonable grounds to support the claim of medical negligence." § 766.203(2)(b), Fla. Stat. (1999). However, as we have previously concluded, a derivative claim based on loss of consortium does not involve negligent medical care and treatment rendered by a heath care provider to the person making the derivative claim. Thus the fallacy of the appellees' argument becomes readily apparent when we consider the specter of a party with such a claim attempting the impossible task of obtaining a verified medical opinion from a qualified health care provider when the claimant never had a medical illness or injury and was never treated by any health care provider.
We must interpret and apply the Act to avoid an absurd result and to bring symmetry to all of the pertinent provisions of the Act relating to pre-suit notice and investigation. Furthermore, we are compelled to liberally interpret and apply this unique statutory framework in a manner that comports with the repeated decisions of the courts that have interpreted the Act in a way that protects a citizen's constitutional right to access to the courts without inhibiting the salutary purpose of investigating and screening out frivolous medical malpractice suits. See e.g., Musculoskeletal Inst. Chartered. We, therefore, agree that the decision in Chandler is the better-reasoned approach in cases involving medical malpractice suits. A party seeking to establish liability for a derivative claim for loss of consortium is not a claimant under the Act who is required to comply with the pre-suit notice and investigation provisions of the Act.
We find no merit in the appellees' argument that they were prejudiced in their attempt to evaluate and respond to the claim in this case without separate notice of intent regarding the derivative claims. We note that the appellees in the instant case denied liability for the claim filed by the injured spouse after the presuit investigation was completed. Since the derivative claim is dependent on liability for the injured party's claim, denial of the substantive claim necessarily precluded any consideration of the derivative claim. See Chandler. We are equally unimpressed with the suggestion that the appellees would have considered compensation for the derivative claim after denying liability for the injured spouse's claim or that notice of the consortium claim would have prompted them to reevaluate their position regarding liability for the substantive claim. Thus, the appellees have failed to show that they were prejudiced by the lack of a separate notice regarding the derivative claim.
We conclude that a party with a derivative claim for loss of consortium does not have to comply with the pre-suit notice provisions of the Act when the party injured by the act of medical negligence has done so. The summary judgment is reversed and this case is remanded for further proceedings.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
PLEUS, J., dissents, with opinion.
PLEUS, J., dissenting.
The issue in this case is whether the presuit notice requirements of section 766.106(2), require a spouse's or a child's derivative claim to be separately or distinctly noticed.
The majority opinion will have the effect of asking defendants to attempt settlement without knowing who the plaintiffs will be. To hold this is what the legislature intended makes no sense to me.
Maria Pavolini filed suit claiming injuries as a result of medical malpractice. Her husband Arturo and daughter Stephanie joined in the suit asserting derivative claims. The presuit notice did not list Arturo or Stephanie as potential claimants. Within the 90-day evaluation period, the *415 health care providers rejected Maria's claim in accordance with subsection 766.106(3)(b)1. The trial judge dismissed the third amended complaint as to Arturo and Stephanie and this appeal followed. I dissent because I agree with the trial judge that section 766.106 requires separate and distinct notice of such derivative claims.
Courts of this state have uniformly found the primary purpose of chapter 766 is to "promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Cohen v. Dauphinee, 739 So.2d 68, 71 (Fla. 1999). Toward that objective, the presuit requirements in chapter 766 have at least two purposes. The first intent is to force the claimant to conduct an investigation of the suspected malpractice and the defenses which may be asserted. The burden is on the medical malpractice claimant to make a "reasonable investigation" to determine that there are grounds for a good faith belief that there has been negligence.
The second purpose is evaluation and settlement. Once the claimant's investigation is complete, subsection 766.106(2) requires that the claimant serve all potential defendants with a notice of intent to initiate litigation. It is then incumbent upon the potential defendants to evaluate the claim. When the defendants' evaluation is completed, the defendants have four options, each of which carry grave risks. The claim may be rejected. A settlement offer can be made. Liability may be admitted with arbitration as to damages. The fourth option is to give no response.
Because the derivative claims of Arturo and Stephanie are separate and independent claims, the derivative claimants must be identified and treated the same as any other claimants. If the notice by Maria Pavolini, which never mentioned Arturo or Stephanie, was deemed sufficient satisfaction of a notice requirement, the legislative purpose of the presuit process would be undermined. Claims by Arturo and Stephanie require independent liability and damage assessments by the defendants which are different from those of Maria.
For example, Stephanie would claim as a minor under section 768.0415.[1] Investigation would require, of necessity, a determination of whether the injuries to Stephanie's mother were permanent, resulting in a permanent total disability. Without such an analysis, it would be virtually impossible for the defendants to make a realistic offer of settlement which would settle both claims.
The Pavolinis argue that the presuit notice sufficiently notified the prospective defendants of the incident that would give rise to suit, thereby eliminating the need for further investigation. The burden on defendants is to evaluate, and in appropriate circumstances, attempt settlement prior to litigation. It is not enough to be made aware of an alleged incident to evaluate potential claims and the amount of the claims.
In support of their argument, the plaintiffs cite Chandler v. Novak, 596 So.2d 749 (Fla. 3d DCA 1992). I believe the rationale of Chandler is flawed because it equates liability to the primary claimant (the patient) with liability to family members of the primary claimant. Furthermore, it ignores the need to analyze the impact which the negligent medical malpractice had on the marital relationship and the filial relationship. See, e.g., Albritton v. State Farm Mut. Auto. Ins. Co., 382 So.2d 1267 (Fla. 2d DCA 1980) and Propst v. Neily, 467 So.2d 398 (Fla. 4th DCA 1985). As noted in Propst, Arturo, the *416 husband, would not automatically prevail on the issue of liability simply because Maria, the wife, prevailed on her claim. Stephanie, the daughter, could not prevail on her claims unless Maria's injuries were permanent. There is no rule that all spouses and children of injured persons automatically qualify for a loss of consortium award or damages under 768.0415.
It should also be noted that Chandler was based on the court's interpretation of the predecessor to section 766.106, which was section 768.57, Florida Statutes (1987). After Chandler, section 768.57 was renumbered and a substantial new portion was added under the heading "informal discovery." A careful reading of the added portion on informal discovery leads one to the inescapable conclusion that Chandler is no longer good law. Throughout subsection 766.106(7), references are made to "parties." Without being listed as "parties" in the notice of suit, it would be impossible to impose any sanctions on Arturo or Stephanie for noncompliance. Chandler fails to contemplate the presuit necessity to evaluate damages. Without the resources to make a full and thorough evaluation, it would be impossible to make an intelligent choice of which of the four options discussed above would eliminate the necessity of a lawsuit.
The case of Metropolitan Dade County v. Reyes, 688 So.2d 311 (Fla.1996) contains a proper rationale and involves a notice of intent to sue under section 768.28 (sovereign immunity) which mentions only the injured party but not the spouse who wished to make a derivative claim. The rationale of Reyes applies alike to sovereign immunity claims under section 768.28 and medical malpractice, both of which have the same presuit objectives. In Reyes, the supreme court noted, "valid investigatory reasons for requiring that notice be given of all claims," including derivative claimants. Id. at 313. Although for reasons of judicial restraint the supreme court did not overrule Chandler, it certainly disapproved its rationale. The Pavolinis argue that once the health care providers investigate the claim of Maria, they presumably will learn she had a husband and a daughter. From that knowledge, they presumably can assume Arturo and Stephanie will be plaintiffs in the suit. The problem with that argument is a practical one. The investigative scope granted to a prospective defendant under subsection 766.106(7) to evaluate the claim is expressly limited to "parties" and requires that "the parties shall make discovery information available without formal discovery. Failure to do so is grounds for dismissal of claims or defenses ultimately asserted." Without notice, Arturo and Stephanie are not considered "parties" to the presuit informal discovery and have no obligation to provide any information even if the defendants could guess who they were and assume they might later become parties. How is defense counsel able to take statements from unwilling non-parties, send interrogatories, request documents and make other relevant inquiries? Only the primary claimant has an obligation to provide access to information about the claim. With notice, however, each prospective party must give access to pertinent information.
Subsection 766.106(2) is unambiguous and defines who must take what action, when it must be done, and how. "When" is defined by the requirement that presuit notice be sent "after completion of presuit investigation pursuant to § 766.203." The notice must be sent prior to filing suit but after the claimant has completed presuit investigation.
The "who" is any "claimant" and that includes Arturo and Stephanie. They both have a potential, independent cause of action arising out of medical malpractice or negligence. The "how" requires certified mail and the notice must be accompanied by a detailed corroborating medical affidavit.
I do not see this case as a mere technical blunder resulting in no prejudice to the defendants. The prejudice is obvious. *417 Chandler and the decision of the majority in this case have the potential to impede the purpose of the presuit evaluation and compromise legislative intent relative to settlement.
The correct approach is to follow the rule of construction announced by this court in Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), rev. denied, 604 So.2d 487 (Fla.1992), that notice requirements are construed strictly and failure to comply with the notice required justifies dismissal of the complaint. Williams v. Campagnulo, 588 So.2d 982 (Fla.1991).
While the notice did provide sufficient notice for the evaluation of Maria's claim, it did not provide any information that would even imply Arturo and Stephanie existed, let alone that they had claims of their own which they intended to pursue.
Four judges have now considered this case: the trial judge, and three appellate judges. The decisions so far are two to two. Unfortunately for the appellees, the two whose opinion will determine the outcome agree with the appellant.
NOTES
[1] The child's claim is based on section 768.0415, Florida Statutes, which establishes a cause of action on behalf of the child to recover damages for permanent loss of services, comfort, companionship, and society from a person who causes significant permanent injury to the child's natural parent. The courts often refer to a claim brought under this statute as a derivative claim for loss of consortium. See U.S. v. Dempsey, 635 So.2d 961 (Fla.1994); see also Gomez v. Avis Rent A Car Sys., Inc., 596 So.2d 510 (Fla. 3d DCA 1992). Therefore, for ease of discussion, we refer to both the husband's claim and the minor child's claim as a claim for loss of consortium.
[2] The provisions of this statute are now contained in section 766.106, Florida Statutes (1999).
[3] The pre-suit investigation provisions require "that reasonable investigation precede both malpractice claims and defenses in order to eliminate frivolous claims and defenses" and it also provides for "medical corroboration procedures." § 766.201(2)(a), Fla. Stat. (1999).
[4] This interpretation of the Act comports with decisions that interpret the applicable statute of limitations found in section 95.11(4)(b), Florida Statutes which defines an "action for medical malpractice" as "a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care." See e.g., Silva v. Southwest Florida Blood Bank, Inc., 601 So.2d 1184, 1186 (Fla.1992) (concluding, "Thus, under the statute our inquiry is twofold: (1) whether the action arose out of `medical ... diagnosis, treatment, or care,' and (2) whether such diagnosis, treatment, or care was rendered by a `provider of health care.'"); J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 948 (Fla.1994) (defining diagnosis, treatment, or care as meaning "ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness"); Lynn v. Mount Sinai Med. Ctr., Inc., 692 So.2d 1002, 1003 (Fla. 3rd DCA 1997) (stating, "The wrongful act must be directly related to the improper application of medical services, and the use of professional judgment or skill.") (citation omitted). Stackhouse v. Emerson, 611 So.2d 1365, 1366 (Fla. 5th DCA 1993) (reiterating that a claim for medical malpractice must be based on "a consensual or otherwise legitimate health care provider/patient relationship").
[1] 768.0415. Liability for injury for parent.-

A person who, through negligence, causes significant permanent injury to the natural or adoptive parent of an unmarried dependent resulting in a permanent total disability shall be liable to the dependent for damages, including damages for permanent loss of services, comfort, companionship, and society. This section shall apply to acts of negligence occurring on or after October 1, 1988.