Dear Mr. Wolfe:
You ask substantially the following question:
Does section 255.0517, Florida Statutes, authorize the City of St. Petersburg to utilize an "owner-controlled insurance program" in connection with the construction of improvements to the city's water resource system under the city's capital improvement program plan?
According to your letter, the City of St. Peterburg is three years into a seven-year Water Resources System Capital Improvement Plan to construct various improvements to its water resource system. The system consists of wastewater, potable water, and reclaimed water systems that the city owns and operates. The cost of the remaining improvements under the plan is $168.7 million.[1] The city is interested in utilizing an owner-controlled insurance program pursuant to section255.0517, Florida Statutes.
Section 255.0517(2), Florida Statutes, provides:
 "A state agency, political subdivision, state university, community college, airport authority, or other public agency[2] in this state, or any instrumentality thereof, may only purchase an owner-controlled insurance program in connection with a public construction project if it is determined necessary and in the best interest of the public agency and if all of the following conditions are met:
 (a) The estimated total cost of the project is:
 1. Seventy-five million dollars or more;
 2. Thirty million dollars or more, if the project is for the construction or renovation of two or more public schools during a fiscal year; or
 3. Ten million dollars or more, if the project is for the construction or renovation of one public school, regardless of whether the project's duration extends beyond a fiscal year.
 (b) The program maintains completed operations insurance coverage for a term during which the coverage is reasonably commercially available, as determined by the public agency, but for no less than 5 years.
 (c) The bid or proposal specifications for the project clearly specify, for all bidders or proposers, the insurance coverage provided under the program and the minimum safety requirements that must be met.
 (d) The program does not prohibit a contractor or subcontractor from purchasing any additional insurance coverage that the contractor or subcontractor believes is necessary for protection against any liability arising out of the contract. The cost of the additional insurance must be disclosed to the public agency.
 (e) The program does not include surety insurance.
 (f) The public agency may only purchase an owner-controlled insurance policy that has a deductible or self-insured retention if the deductible or self-insured retention does not exceed $1 million per occurrence.
 (g) The public agency is responsible for payment of the applicable deductibles of all claims."
Subsection (3) of section 255.0517, Florida Statutes, provides exemptions to application of the statute. You have advised this office, however, that none of the exemptions is applicable to the instant inquiry.[3]
You ask this office to presume that the city will meet the conditions specified in section 255.0517(2)(b)-(g) and will annually budget for the specified improvements. Thus, your inquiry concerns whether the plan's improvements to the potable water, wastewater and reclaimed water systems constitute a "public construction project."[4]
The term "public construction project" is not defined in the statutes. The term "owner-controlled insurance program," however, is defined to mean
 "a consolidated insurance program or series of insurance policies issued to a public agency that may provide one or more of the following types of insurance coverage for any contractor or subcontractor working at specified or multiple contracted work sites of a public construction project: general liability, property damage excluding coverage for damage to real property, workers' compensation, employer's liability, or pollution liability coverage."[5] (e.s.)
Section 255.0517(1)(c), Florida Statutes, defines "[m]ultiple contracted work site" to mean "construction being performed at multiple sites during one or more fiscal years that is part of an ongoing capital infrastructure improvement program or involves the construction of one or more public schools."[6] Thus, section 255.0517 contemplates
 that a public construction project may include improvements at different noncontiguous sites and that construction may take place over more than one fiscal year.[7]
In defining "[m]ultiple contracted work site," section255.0517(1)(c), Florida Statutes, refers to "construction being performed at multiple sites during one or more fiscal years that is part of an ongoing capital infrastructure improvement program. . . ." While the term "capital infrastructure improvement program" is not defined, the improvements to the potable water, wastewater and reclaimed water systems as presented to this office would appear to qualify.[8]
The issue would therefore appear to be whether the planned improvements to the city's potable water, wastewater, and reclaimed water systems are sufficiently related to constitute a public construction project.
According to your letter, the potable water system collects and distributes "drinking" water throughout the city, most of which eventually enters the wastewater system. This system collects and treats wastewater that is distributed to the reclaimed water system for distribution for outdoor uses throughout the city. The systems, then, are interrelated, and you state that certain improvements or facilities are considered system-wide in that they benefit all three systems — such as an administration building, laboratories, and integrated computer hardware and software systems. According to your letter, one director directly supervises all three systems, the laboratory staff provides field services for all three systems, and the potable and reclaimed water systems utilize the same staff and equipment. In addition, you state that the emergency response and critical and emergency repair programs are integrated and cross-divisional with the potable water and wastewater staff able to respond to situations involving either system.
It therefore appears that the three systems are sufficiently interrelated to constitute a public construction project within the meaning of section 255.0517, Florida Statutes. Accordingly, I am of the opinion that section 255.0517, Florida Statutes, authorizes the City of St. Petersburg to utilize an "owner-controlled insurance program" in connection with the construction of improvements to the city's water resource system under the city's capital improvement program plan, provided that the city will meet the conditions specified in section255.0517(2)(b)-(g), Florida Statutes, and such project does not fall within any of the exceptions set forth in section255.0517(3), Florida Statutes.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] You state that of that amount approximately 38.9 million dollars is for the potable water system, approximately 107.6 million dollars is for the wastewater system, approximately 5.81 million dollars is for the reclaimed water system, and approximately 8.47 million dollars is for system-wide improvements.
[2] See s. 1.01(8), Fla. Stat., stating that, in construing the Florida Statutes, the term "political subdivision" includes counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts, and all other districts in this state.
[3] See s. 255.0517(3), Fla. Stat., which provides:
 "This section does not apply to the following projects:
 (a) Any project of the Department of Transportation which is authorized under s. 337.11;
 (b) Any existing project or projects of a public agency which are the subject of an ongoing, owner-controlled insurance program issued before October 1, 2004; or
 (c) Any project of a public agency which is advertised by the public agency before October 1, 2004, for the purpose of receiving bids or proposals for the project."
[4] If not, only the planned improvements to the wastewater system estimated to cost approximately 107.6 million dollars would satisfy the requirements of s. 255.0517(2)(a), Fla. Stat., that the estimated cost of the project is seventy-five million dollars or more.
[5] Section 255.0517(1)(a), Fla. Stat.
[6] Compare s. 255.0517(1)(b), Fla. Stat., which defines "[s]pecified contracted work site" to mean construction being performed during one or more fiscal years at one site or a series of contiguous sites separated only by a street, roadway, waterway, or railroad right-of-way or along a continuous system for the provision for water and power.
[7] The statute separately defines "[s]pecified contracted work site" and "[m]ultiple contracted work site." See s.255.0517(1)(b) and (c), Fla. Stat., respectively. Moreover, s.255.0517(1)(a), Fla. Stat., in defining "[o]wner-controlled insurance program" refers to "specified or multiple contracted work sites." The word "or" is generally construed in the disjunctive when used in a statute and normally indicates that alternatives were intended. See Sparkman v. McClure,498 So. 2d 892 (Fla. 1986); Telophase Society of Florida, Inc. v. StateBoard of Funeral Directors and Embalmers, 334 So. 2d 563 (Fla. 1976); Fort Walton Beach Medical Center, Inc. v. Dingler,697 So. 2d 575 (Fla. 1st DCA 1997); Op. Att'y Gen. Fla. 2000-06 (2000) (use of the term "or" in statute is generally construed to be disjunctive, indicating that alternatives were intended).
[8] Cf. s. 212.055(2)(d)2., Fla. Stat., which provides for the use of proceeds from the local government infrastructure surtax to finance, plan, and construct infrastructure which is defined to mean:
 "a. Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of public facilities which have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto.
 * * *
 c. Any expenditure for the construction, lease, or maintenance of, or provision of utilities or security for, facilities as defined in s. 29.008."
And see s. 29.008(1)(d), Fla. Stat., defining "[u]tilities" to mean
 "all electricity services for light, heat, and power; natural or manufactured gas services for light, heat, and power; water and wastewater services and systems, stormwater or runoff services and systems, sewer services and systems, all costs or fees associated with these services and systems, and any costs or fees associated with the mitigation of environmental impacts directly related to the facility." (e.s.)
See also s. 163.3164(24), Fla. Stat., defining "[p]ublic facilities" to mean major capital improvements, including, but not limited to, transportation, sanitary sewer, solid waste, drainage, potable water, educational, parks and recreational, and health systems and facilities. . . ."