# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D16-4604

———————————————

DIANE RODRIGUEZ and DAVID
RODRIGUEZ, her husband,

    Appellants,

    v.

ERNST NICOLITZ, M.D. and
LENKA CHAMPION, M.D.,

    Appellees.

———————————————

On appeal from the Circuit Court for Duval County.
Karen Cole, Judge.

May 18, 2018

BILBREY, J.

Diane Rodriguez and her husband, David Rodriguez, appeal an order dismissing with prejudice their medical malpractice complaint as to Lenka Champion, M.D. Dr. Champion was one of two defendants sued by the Rodriguezes after Mrs. Rodriguez experienced an infection following eye surgery. Because the presuit notice requirements were not met as to Dr. Champion, the trial court correctly dismissed the complaint as to Dr. Champion. We therefore affirm.

## I. Background

On April 23, 2013, Mrs. Rodriguez underwent a blepharoplasty on her upper and lower eyelids, a procedure to repair droopy eyelids and to remove excess tissue around the eyes. The surgery was performed by Ernst Nicolitz, M.D., an ophthalmologist. Following the surgery, Mrs. Rodriguez developed an infection in her left eye. Three post-operative examinations of Mrs. Rodriguez were performed by Dr. Champion, also an ophthalmologist, who was employed by the same professional association as Dr. Nicolitz. According to Mrs. Rodriguez, the infection left her with serious visual impairments, dizziness, continued risk of infection, and an asymmetrical facial appearance.

By letter dated Jan. 13, 2014, Dr. Nicolitz was advised by Mr. and Mrs. Rodriguez of their intent to initiate litigation for medical malpractice. Attached to the letter was the affidavit of Eliot B. Siegel, M.D., whose stated specialty was ophthalmology. The letter indicated that no other defendants were known at the time, and Dr. Champion was identified in the letter as one of the known medical treatment providers to Mrs. Rodriguez.

Thereafter, by a complaint filed May 19, 2014, Mrs. Rodriguez sued Dr. Nicolitz, but not his professional association (Ernest Nicolitz, M.D., P.A., d/b/a Nicolitz Eye Consultants), for medical negligence. A loss of consortium claim was alleged in the complaint against Dr. Nicolitz by Mr. Rodriguez.

By letter dated June 15, 2015, Dr. Champion was for the first time advised of the Rodriguezes' intent to initiate litigation against her for medical malpractice. Dr. Champion was employed by Nicolitz Eye Consultants, and as noted, she had conducted some post-operative examinations of Mrs. Rodriguez. Unlike Dr. Nicolitz however, Dr. Champion was not an officer, director, or shareholder of Nicolitz Eye Consultants. Attached to the notice of intent was an affidavit of Richard K. Sall, M.D., whose medical specialty was listed as "Infectious Diseases."

Thereafter, the Rodriguezes sought leave to amend their complaint to add Dr. Champion as a defendant. The amended complaint alleged Dr. Champion committed medical negligence

2

for failing to accurately diagnose the nature of Mrs. Rodriguez' eye infection.

After a stay requested by Dr. Nicolitz was denied and after leave was granted to file the amended complaint, Dr. Champion moved to dismiss that amended complaint. Dr. Champion argued that the notice of intent to initiate litigation did not comply with section 766.102(5)(a), Florida Statutes (2012), which mandates that in litigation involving a specialist defendant, a plaintiff's expert be of the same or similar specialty as the defendant.[1] Dr. Champion is an ophthalmologist while Dr. Sall is an infectious disease specialist. In support of her position, Dr. Champion cited *Edwards v. Sunrise Ophthalmology Assoc.*, 134 So. 3d 1056 (Fla. 4th DCA 2013), where the reviewing court held that an ophthalmologist and an infectious disease specialist were too dissimilar to satisfy section 766.102(5)(a) under the facts of that case.

The trial court here agreed that Dr. Sall's affidavit was inadequate since his specialty differed from Dr. Champion, and thus the mandatory presuit notice of June 15, 2015, was insufficient as to Dr. Champion.

The Rodriguezes countered by asserting that the presuit notice and affidavit of Dr. Siegel, filed with respect to Dr. Nicolitz on January 13, 2014, should also apply to Dr. Champion as the doctors are in a "legal relationship." The trial court conducted an evidentiary hearing to determine whether the doctors were in a

---

[1] The parties disagree whether the trial court applied the 2012 or 2013 version of section 766.102(5)(a). The 2013 version requires that a plaintiff's expert be of the same specialty as the defendant. On appeal, the parties agree that the 2012 version of section 766.102 applies. *See* Ch. 2013-108, §§ 2, 6, & 7, Laws of Fla. (applying a July 1, 2013, effective date to the statutory amendment). Below, we analyze the issue under the 2012 version of the statute and hold that the trial court did not commit error.

legal relationship such that it would be appropriate, per rule 1.650, Florida Rules of Civil Procedure, to impute to Dr. Champion knowledge of the prior presuit notice directed to Dr. Nicolitz.

In the written order dismissing with prejudice the amended complaint as to Dr. Champion, the trial court held that under rule 1.650, the January 13, 2014, notice with corroborating affidavit of Dr. Siegel, did not operate as presuit notice to Dr. Champion. The trial court explained that the notice would have been effective as to Dr. Champion only if Dr. Champion was a "prospective defendant" at the time Dr. Nicolitz received the notice and Dr. Champion had a "legal relationship" with Dr. Nicolitz.

The presuit notice to Dr. Nicolitz "plainly stated there were no other 'prospective defendants,'" the trial court observed. Further, the trial court concluded that the two doctors did not have a legal relationship. The Rodriguezes now take issue with that conclusion. They argue on appeal that the notice given to Dr. Nicolitz, which was accompanied by the affidavit of Dr. Siegel was sufficient as to Dr. Champion as well. We reject the Rodriguezes' arguments.

## II. Analysis

Before a complaint alleging medical malpractice may be filed, Florida law requires that certain activities be taken prior to the filing of a lawsuit. *See Williams v. Oken*, 62 So. 3d 1129, 1133 n.1 (Fla. 2011). While these presuit requirements are conditions precedent to a malpractice suit, the provisions of the statute were not intended to deny access to the courts on the basis of technicalities. *Fort Walton Beach Med. Ctr., Inc. v. Dingler*, 697 So. 2d 575 (Fla. 1st DCA 1997).

By Florida's presuit requirements, a potential plaintiff first must serve on a potential defendant notice of intent to initiate litigation for medical negligence. § 766.106(2)(a), Fla. Stat. (2012). With the notice, a potential plaintiff is required to submit a "verified written medical expert opinion from a medical expert

4

as defined in s. 766.202(6)" which supports a claim of medical negligence. § 766.203(2)(b), Fla. Stat. (2012).

A medical expert as defined in section 766.202(6) is "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college **and** who meets the requirements of an expert witness as set forth in s. 766.102." (Emphasis added).

An expert witness as defined in section 766.102 is, in turn, a "health care provider who holds a valid and active license and conducts a complete review of the pertinent medical records," and if the expert witness is presented as a specialist, the expert must

> [s]pecialize in the same specialty as the [potential defendant]; or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients; . . . .

§ 766.102(5)(a)1, Fla. Stat. (2012).

In finding that Dr. Sall was not engaged in the "same" specialty as Dr. Champion, the trial court relied on *Edwards*.[2] The defendant in *Edwards* was an ophthalmologist, as is Dr. Champion, and the expert retained by the plaintiff in *Edwards* was an infectious disease specialist, as is Dr. Sall. 134 So. 3d at 1057. The plaintiff in *Edwards*, like Mrs. Rodriguez here, suffered a bacterial infection following eyelid surgery. *Id.*

The majority in *Edwards* held that an infectious disease doctor is not within the "same specialty" as an ophthalmologist. The court explained:

> If we were to allow an infectious disease doctor to be considered a similar specialty to an ophthalmologist or

---

[2] While the *Edwards* court did not apply the 2012 version of chapter 766, the 2009 version which it did apply is substantially the same as the 2012 version.

5

one "that includes the evaluation, diagnosis, or treatment of the medical condition"—a bilateral blepharoplasty—we would impose the infectious disease doctor's expertise on a dissimilar eye-surgery specialist. This vitiates the very nature of a physician's specialization. Neither could we impose the eye surgeon's specialization on the infectious disease doctor.

*Id.* at 1059. We agree and hold that based on the record here, Dr. Champion, an ophthalmologist, and Dr. Sall, an infectious disease specialist, did not practice the "same specialty."

Further, the *Edwards* majority rejected the suggestion made by the dissent that the expert qualified as an expert in a "similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim." *Id.* The majority in *Edwards* said that in the case before it

the medical condition was ophthalmic in nature, a bilateral blepharoplasty. The infectious disease doctor does not "specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of" a bilateral blephroplasty or any type of surgery. And, the infectious disease doctor's affidavit does not suggest otherwise.

*Id.*

Likewise, it cannot be said on the record before us that Dr. Sall specializes in a specialty "similar" to that of Dr. Champion. Nothing in this record indicates that Dr. Sall has evaluated, diagnosed, or treated a post-blepharoplasty infection. Dr. Sall's affidavit does not express any familiarity with the standard of care applicable to physicians who perform blephroplasty. Thus, as a matter of law, Dr. Sall cannot qualify as specialist for purposes of presuit notification with regard to Dr. Champion given his qualifications.

It is worth noting that the purpose of the presuit requirements is to provide a means for "prompt resolution of medical claims." *See* 766.201(2), Fla. Stat. (2012) (statement of

6

legislative findings and intent). Said another way, the statutory presuit screening provisions were intended by the Legislature to facilitate the expedient, and preferably amicable, resolution of medical malpractice claims. *Williams,* 62 So. 3d at 1133 n.1; *Ingersoll v. Hoffman*, 589 So. 2d 223, 224 (Fla. 1991). In the case at bar, although the nature of Mrs. Rodriguez' injury was known within weeks of April 23, 2013, surgery, there was no attempt to bring Dr. Champion into the litigation until June 15, 2015, a year after notice was given to Dr. Nicolitz, a notice which, incidentally, acknowledged Dr. Champion as a medical provider.

As for the Rodriguezes' argument that the trial court erred in finding an insufficient legal relationship between Dr. Champion and Dr. Nicolitz so as to impute the presuit notice given to Dr. Nicolitz (the adequacy of which as to Dr. Nicolitz is not now before us), we find no basis to reverse. The findings of fact made by the trial court in concluding an insufficient legal relationship existed are supported by the record. Nor do we find merit in Rodriguezes' claim that the trial court erred in not applying the equitable tolling doctrine.

AFFIRMED.

B.L. THOMAS, C.J., and JAY, J., concur.

––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––

Brandon S. Vesely of Albertelli & Whitworth, Tampa; Wesley T. Straw and Matthew D. Emerson of Emerson Straw PL, St. Petersburg, for Appellants.

Michael R. D'Lugo and Richard E. Ramsey of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, for Appellee Lenka Champion, M.D.

7