KAHN, J.
 

 In respondents’ medical negligence suit against Baptist Medical Center of the Beaches, Inc. (Baptist), petitioner moved to dismiss the complaint for failure to comply with the presuit requirements of chap
 
 *114
 
 ter 766, Florida Statutes (2009). The trial court denied the motion. Petitioner seeks certiorari review of the trial court’s order on the ground that respondents’ notice of intent to initiate litigation is legally insufficient. Concluding that petitioner has not met its burden to demonstrate entitlement to extraordinary relief, we deny the petition for writ of certiorari.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 In pertinent part, the complaint alleged that beginning April 17, 2008, respondent Arthur Rhodin was hospitalized at Baptist. Through April 19, 2008, he demonstrated severe and progressively worsening pain in his neck, back, and right side of the chest. The Rhodins alleged that petitioner, through its employees and agents, deviated from the appropriate standards of reasonable medical care, causing injury to Mr. Rhodin 1) by failing to appreciate Mr. Rhodiris worsening clinical condition of extreme pain and the need for diagnostic determination of the pain’s source; 2) by failing to communicate in a timely, appropriate manner with the attending physicians that Mr. Rhodin’s clinical condition was worsening, he was not responding to strong pain medication, and he needed diagnostic intervention; 3) by failing to adequately team its nursing staff in the above-described skills; 4) by failing to maintain adequate policies and procedures that address the above-described skills; and 5) by negligently training and credentialing the nursing staff member who primarily cared for Mr. Rhodin on the evening of April 19, 2009. Simply stated, the complaint alleged negligent nursing care that caused injury to Mr. Rhodin.
 

 As required by section 766.203(2), Florida Statutes (2009), respondents filed the affidavit of Dr. Michelle M. Byrne, a Ph.D. and registered nurse, in compliance with the statutory presuit investigation mandate. After reviewing Mr. Rhodiris medical records and relying on her own education, training, and experience, Dr. Byrne opined reasonable grounds exist to initiate a claim for medical malpractice on the part of petitioner’s nurses, employees, or agents. Specifically, Dr. Byrne found that petitioner, including its nursing staff, deviated from acceptable and appropriate standards of care 1) by failing to accurately, timely assess Mr. Rhodiris worsening clinical condition and 2) by failing to communicate in an appropriate, timely manner with the attending physicians that Mr. Rhodiris clinical condition was worsening. Byrne concluded that these deviations from appropriate care caused or substantially contributed to Mr. Rhodin’s permanent injury. Baptist moved to dismiss the complaint based on respondents’ failure to satisfy the presuit notice requirements of chapter 766. Specifically, Baptist objected to the affidavit submitted by Dr. Byrne. The trial court denied the motion, and Baptist asks us to quash that denial.
 

 II. ANALYSIS
 

 A. Basis for Certiorari Jurisdiction
 

 As always, we must make a threshold determination of whether to exercise certiorari jurisdiction. A writ of certiorari, which is an extraordinary common-law remedy subject to “strict prerequisites,” is -not available as a matter of right and should be used only in very limited circumstances.
 
 See Abbey v. Patrick,
 
 16 So.3d 1051, 1054 (Fla. 1st DCA 2009). Certiorari review of a nonfinal order denying a motion to dismiss is generally unavailable.
 
 See Martin-Johnson, Inc. v. Savage,
 
 509 So.2d 1097, 1099 (Fla.1987). Courts do afford such review, however, in the rare and “narrow context” where a medical defendant presents facts demonstrating the plaintiff has not met the pre-
 
 *115
 
 suit notice requirements of chapter 766.
 
 See Miami Physical Therapy Assocs. v. Savage,
 
 682 So.2d 114, 116 (Fla. 3d DCA 1994);
 
 Oken v. Williams,
 
 23 So.3d 140, 145 (Fla. 1st DCA 2009). The appropriate scope of certiorari review of an order denying a motion to dismiss in the context of chapter 766 presuit compliance actions was described in
 
 St. Mary’s Hospital v. Bell,
 
 785 So.2d 1261, 1262 (Fla. 4th DCA 2001) (stating “certiorari is available to review whether a trial judge followed chapter 766 and whether a plaintiff complied with pre-suit notice and investigation requirements; certiorari is not so broad as to encompass review of the evidence regarding the sufficiency of counsel’s pre-suit investigation”);
 
 see Simeon, Inc. v. Cox,
 
 671 So.2d 158, 160 (Fla.1996). Under a jurisdictional analysis, certiorari review is proper if the trial court’s order fails to satisfy the mandatory presuit procedures in chapter 766, which are a condition precedent to a medical malpractice suit.
 
 See Kukral v. Mekras,
 
 679 So.2d 278, 283 (Fla.1996);
 
 Oken,
 
 23 So.3d at 144;
 
 Lakeland Reg’l Med. Ctr., Inc. v. Allen,
 
 944 So.2d 541, 543 (Fla. 2d DCA 2006);
 
 Parkway Bank v. Fort Myers Armature Works, Inc.,
 
 658 So.2d 646, 649 (Fla. 2d DCA 1995). Baptist asserts that Dr. Byrne’s affidavit does not meet the presuit requirements of chapter 766. If this is so, then allowing respondents to fully litigate the suit would cause petitioner material harm that could not be remedied on plenary appeal.
 
 See Goldfarb v. Urciuoli,
 
 858 So.2d 397, 398 (Fla. 1st DCA 2003). Accordingly, we have jurisdiction to consider the merits of Baptist’s claims. If the order denying petitioner’s motion to dismiss is materially wrong, we must quash it; otherwise, we have no basis to exercise extraordinary jurisdiction.
 

 B. Departure From Essential Requirements of Law
 

 Having found a tentative basis for certiorari jurisdiction, we must consider next whether the nonfinal order passes the standard of review on its merits, i.e., whether the trial court departed from the essential requirements of law. The Florida Legislature enacted presuit investigation requirements “to provide a plan for prompt resolution of medical negligence claims.” § 766.201(2), Fla. Stat. (2009);
 
 see Cohen v. Dauphinee,
 
 739 So.2d 68, 71 (Fla. 1999). Medical malpractice plaintiffs do not have the same common-law rights as do victims of other types of negligence. The presuit requirements, as well as other restrictions, derived from findings made by the Florida Legislature in 1988.
 
 See
 
 Ch. 88-1, § 48, Laws of Fla. (codified as section 766.201, Florida Statutes (2009)). According to the Legislature, the tightened rules governing recovery in medical malpractice situations are justified because, in 1988, the Legislature determined that a dramatic increase in medical malpractice liability insurance premiums had resulted “in increased medical care costs for most patients and functional unavailability of malpractice insurance for some physicians.” § 766.201(l)(a), Fla. Stat. (2009). Accordingly, chapter 766 requires a potential plaintiff to perform an investigation of the merits of the claim and prepare a notice of intent to litigate before filing suit. Before issuing notice, however, a claimant must “ascertain that there are reasonable grounds to believe that ... [a]ny named defendant in the litigation was negligent in the care or treatment of the claimant; and ... [sjuch negligence resulted in injury to the claimant.” § 766.203(2), Fla. Stat. (2009);
 
 see Archer v. Maddux,
 
 645 So.2d 544, 546 (Fla. 1st DCA 1994) (“The statute calls for medical corroboration not only of negligence but also of injury in consequence.”). The dispute here focuses upon whether respondents satisfied the requirements of section 766.203(2):
 

 
 *116
 
 Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant’s submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
 

 The ultimate question of whether a claimant has satisfied the threshold requirements of the presuit notice investigation, warranting denial of the defendant’s motion to dismiss, presents an issue of law.
 
 See Apostolico v. Orlando Reg’l Health Care Sys., Inc.,
 
 871 So.2d 283, 286 (Fla. 5th DCA 2004).
 

 Baptist contends the trial court departed from the essential requirements of law in three ways, all of which relate to Dr. Byrne’s qualifications under the statutory presuit investigation standards. First, says Baptist, the court permitted an operating room nurse to offer a presuit expert opinion on the medical cause of Mr. Rho-din’s central nervous system injury and paralysis. Second, the court refused to strike the opinion of a nurse said by Baptist to have knowingly failed to disclose that at least one of her prior opinions was disqualified. Third, the court allowed the nursing opinion of someone, again, as stated by Baptist, who has not been duly and regularly engaged in the practice of nursing as required by law. Resolution of these intertwined issues requires us to examine various provisions of chapter 766 to determine, in this case, whether respondents’ affiant qualifies to give an expert opinion.
 

 1. Byrne’s Opinion on Causation
 

 At the hearing on the motion to dismiss, the Rhodins’ counsel, by reference to the allegations in this case, described the issue as follows: whether a board-certified peri-operative nurse may, for presuit notice purposes, opine on causation issues regarding another nurse’s acts or omissions in failing to monitor a patient’s condition and treatment and failing to notify the treating physician about the patient’s worsening condition. In determining whether the trial court complied with the essential requirements of law in construing the pre-suit notice requirements, we begin with section 766.203(2), Florida Statutes, which requires written corroboration by “a medical expert as defined in s. 766.202(6).” The latter statute would require such an expert to be “a person duly and regularly engaged in the practice of ... her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102.” According to her CV, Dr. Byrne has B.S., M.S., and Ph.D. degrees in nursing and has been an Associate Professor of Nursing at an accredited health professional school since August 2003 and a Program Coordinator for the MS Nursing Education Program since September 2007. Byrne, who is a registered nurse licensed to practice in Georgia, has over 25 years of nursing experience in both the clinical and academic settings. She served as an operating room staff nurse from 1990 to 2004. She has conducted extensive research in the field of nursing and is widely published in journals and academic texts.
 

 Section 766.102(5), Florida Statutes (2009), as referenced in section 766.202(6), defines the “requirements of an expert witness.... ” One may not “give expert testimony concerning the prevailing professional standard of care” unless the person is “a licensed health care provider” and meets certain other criteria. “Health care provider” includes “any person licensed under ... part I of chapter 464,” which is the Nurse Practice Act, sections
 
 *117
 
 464.001-.027, Florida Statutes (2009).
 
 See
 
 § 766.202(4), Fla. Stat. (2009). Although not an issue in this case, we take note that the “licensed provider” referenced in section 766.102(5) does not encompass a universe limited only to Florida licensees. In fact, under the legislative directives concerning presuit investigation, where the trial court finds that the corroborating expert did not meet the requirements of section 766.102(5), the court must report such expert to the Division of Medical Quality Assurance, and “[i]f such medical expert is not a resident of the state, the division shall forward such report to the disciplining authority of that medical expert.” § 766.206(5)(a), Fla. Stat. (2009).
 

 Continuing with our review of the statutes, “[i]f the injury is claimed to have resulted from the negligent affirmative medical intervention of the health care provider,” the claimant, “to prove a breach of the prevailing professional standard of care,” must “show that the injury was not within the necessary or reasonably foreseeable results of the surgical, medicinal, or diagnostic procedure constituting the medical intervention, if the intervention from which the injury is alleged to have resulted was carried out in accordance with the prevailing professional standard of care by a reasonably prudent similar health care provider.” § 766.102(2)(a), Fla. Stat. (2009).
 

 Reaching the central statute as to this dispute, if the health care provider against whom the testimony is offered is “a health care provider other than a specialist or a general practitioner” — here, it is the nursing staff — the criteria in section 766.102(5)(c), Florida Statutes (2009), require the expert witness to have “devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action” to one or more of three types of activities enumerated in subsections (5)(c)l.-3.
 

 Subsection (5)(c)l. contemplates “[t]he active clinical practice of, or consulting with respect to, the same or similar health profession as the health care provider against whom ... the testimony is offered.” Subsection (5)(c)2. contemplates “[t]he instruction of students in an accredited health professional school or accredited residency program in the same or similar health profession in which the health care provider against whom ... the testimony is offered.” Subsection (5)(c)3. contemplates “[a] clinical research program that is affiliated with an accredited medical school or teaching hospital and that is in the same or similar health profession as the health care provider against whom or on whose behalf the testimony is offei-ed.” Dr. Byrne’s CV lists her experience as an Associate Professor of Nursing at an accredited health professional school since August 2003. The affidavit states Byrne’s nursing practice during the past three years included “the provision of nursing care to patients in circumstances similar to that of [Mr.] Rhodin.” The CV lists Dr. Byrne’s experience as an Independent Nurse Consultant since 1993. The record thus demonstrates Dr. Byrne’s credentials satisfy the substantive requirements, at the least, in section 766.102(5)(c)l. and (5)(c)2. Under this section, then, she may “give expert testimony concerning the prevailing professional standard of care.”
 

 Petitioner’s counsel stated at the hearing on the motion to dismiss that petitioner had not contested whether nurse Byrne “qualifies under 102.” Counsel instead challenged Dr. Byrne’s qualifications under section 766.202, Florida Statutes (2009), which defines “medical expert” in subsection (6) and cross-references the requirements of section 766.102, Florida Statutes (2009). Although our review of
 
 *118
 
 the trial court’s ruling has required us to consider the requirements of section 766.102, petitioner’s concession at the hearing suggests further focus on Byrne’s qualifications “under 202.”
 

 The term “medical expert” as used in section 766.202(6) is a term of art delineated by that statute. First, the person must be “duly and regularly engaged in the practice of his or her profession.” Second, the person must hold “a health care professional degree from a university or college.” Third, the person must meet the requirements of an expert witness addressed in section 766.102.
 
 See Hunt v. Huppman,
 
 28 So.3d 989, 992 (Fla. 2d DCA 2010). As to the second requirement, nurse Byrne holds nursing degrees from a university or college. As to the third factor, aside from counsel’s acknowledgment in the trial court that petitioner is not contesting that nurse Byrne “qualifies under 102,” we are satisfied that this prong is met. The present focus, therefore, is upon whether Dr. Byrne’s record satisfies the “duly and regularly engaged in the practice” requirement.
 

 In support of its argument that Dr. Byrne, a peri-operative nurse, is qualified to opine as an expert witness — not only on the standard of care but also on medical treatment, diagnosis, and causation in this case — respondents rely on the Nurse Practice Act, which defines “[p]ractiee of professional nursing” as “the performance of those acts requiring substantial specialized knowledge, judgment, and nursing skill based upon applied principles of psychological, biological, physical, and social sciences” including, but not limited to:
 

 1.The observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care; health teaching and counseling of the ill, injured, or infirm; and the promotion of wellness, maintenance of health, and prevention of illness of others.
 

 2. The administration of medications and treatment as prescribed or authorized by a duly licensed practitioner authorized by the laws of this state to prescribe such medications and treatments.
 

 3. The supervision and teaching of other personnel in the theory and performance of any of the above acts.
 

 § 464.003(3)(a)l.-3., Fla. Stat. (2009);
 
 see
 
 § 464.003(3)(d)-(e), Fla. Stat. (2009) (defining “advanced or specialized nursing practice” and “nursing diagnosis,” respectively);
 
 Apostólico,
 
 871 So.2d at 288
 
 &
 
 nn. 5-6. The Rhodins note that the practice of professional nursing includes nursing diagnosis and treatment,
 
 see
 
 section § 464.003(3)(a)-(b), and that “[ajdvanced or specialized nursing practice” can include “medical diagnosis and treatment,” depending on the practitioner’s qualifications.
 
 See
 
 § 464.003(3)(d). Because Dr. Byrne’s CV indicates her considerable nursing training and experience, and the issue here focuses upon Baptist nursing staffs described lapses in care, treatment, and communication that are the crux of the complaint, the trial court reasonably found Dr. Byrne is qualified to opine as a medical expert on the issues of standard of care and medical causation.
 
 See Apostolico,
 
 871 So.2d at 288 & nn. 5-6;
 
 Fort Walton Beach Med. Ctr., Inc. v. Dingler,
 
 697 So.2d 575, 579 (Fla. 1st DCA 1997) (denying certiorari relief to a medical defendant where the board-certified physician practicing medicine when the alleged malpractice by a podiatrist occurred was a “medical expert” whose affidavit could corroborate the medical malpractice claim, as required by the presuit notification statute, even though the witness had since ceased practicing medicine and was no longer licensed). That is, nurse Byrne’s
 
 *119
 
 corroborating opinion provided “reasonable grounds” to believe petitioner’s nursing negligence resulted in Mr. Rhodin’s injury.
 
 See Apostólico,
 
 871 So.2d at 288-89. Section 766.203 requires just that, not proof after a mini-trial of actual malpractice on the facts presented. Dr. Byrne is not disqualified to offer the threshold opinion.
 

 2. Whether a Prior Opinion Was “Disqualified’’
 

 A corroborating expert must disclose her prior disqualified opinions pursuant to section 766.203(4), Florida Statutes (2009), which states:
 

 (4) PRESUIT MEDICAL EXPERT OPINION. — The medical expert opinions required by this section are subject to discovery. The opinions shall specify whether any previous opinion by the same medical expert has been disqualified and if so the name of the court and the case number in which the ruling was issued.
 

 Affording a most liberal blush to this subsection, Baptist says at least one of Dr. Byrne’s prior opinions was “disqualified” in the proceedings in
 
 Garcia v. Marichalar,
 
 198 S.W.3d 250 (Tex.App.2006), and that she offended by failing to disclose this in her affidavit. Assuming that a foreign, court proceeding (under a comparable statute), as well as a Florida chapter 766 proceeding, is covered in the subsection (4) reference to “court,” we conclude that nurse Byrne’s expert opinion was not “disqualified” in
 
 Garcia
 
 for purposes of the disclosure provision. In that case, neither expert report discussed how Dr. Garcia’s care caused the plaintiff to suffer injury, harm, or damages. Accordingly, the Texas Court of Appeals determined the reports did not constitute a good-faith effort to comply with statutory requirements, and that the trial court abused its discretion by denying a motion to dismiss with prejudice.
 
 See
 
 198 S.W.3d at 255-56. Dr. Byrne was not disqualified as an expert in
 
 Garcia;
 
 instead, her opinion regarding the nurses’ standard of care was deemed insufficient evidence of Dr. Garcia’s standard of care. The appellate court thus rejected the plaintiffs misplaced argument that Dr. Byrne’s opinion was relevant to the issue at hand.
 
 See id.
 
 at 255. Because Byrne’s affidavit did not violate the disclosure requirement, we offer no opinion as to remedy where such a violation is actually made out.
 

 3. Whether Dr. Byrne Was Duly and Regularly Engaged
 

 The third claimed departure from the essential requirements of law relates to whether, under section 766.102(5)(e), Florida Statutes (2009), the facts show nurse Byrne “devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action” to at least one of the three alternatives set forth in sub-subsection (5)(e)l.-3. Baptist argues the record established that for more than five years, Byrne has not been “duly and regularly engaged” in the practice of nursing, contrary to the requirements for a “medical expert” under section 766.202(6), because she stopped working as a staff nurse in the operating room in 2004. Respondents, on the other hand, assert this issue is not appropriate for certiorari review because it challenges the trial court’s finding of sufficient evidence indicating Byrne met the requirements for a “medical expert.”
 
 See Oleen,
 
 23 So.3d at 144-45;
 
 Abbey,
 
 16 So.3d at 1055. Respondents note, in any event, that the language in section 766.102(5)(e)2. is not so narrow as suggested by Baptist and, in fact, contemplates the instruction of students in a qualifying, accredited school or program. Respondents’ interpretation of the statutes avoids a conflict
 
 *120
 
 between the statutes by reconciling the “devoted professional time” requirement of section 766.102(5)(e) and the definition of “practice of professional nursing” in section 464.003(3)(a)3., the latter of which defines the practice to include “supervision and teaching” of nursing. Given Dr. Byrne’s extensive and varied credentials, the trial court did not misconstrue the statutes by concluding that Dr. Byrne is “duly and regularly engaged” in the practice of nursing under section 766.202(6) and satisfies the temporal requirements of section 766.102(5)(c).
 

 The trial court did not depart from the essential requirements of the law in determining that the Rhodins satisfied the chapter 766 presuit requirements. We DENY the petition for writ of certiorari.
 

 ROWE and MARSTILLER, JJ., concur.