OSTERHAUS, J.
Shands Teaching Hospital and Clinics, Inc., d/b/a Shands Vista, an adult psychiatric hospital, seeks a writ of certiorari to quash an order denying .its motion to dismiss a negligence action. Shands asserts that the Estate of Ashley Lawson failed to comply with mandatory presuit requirements under chapter 766, Florida Statutes (2014), before bringing a medical negligence claim cloaked in allegations of ordinary negligence. We have certiorari jurisdiction and conclude that because the claim arises from the services and care Shands was giving to a patient in a locked psychiatric unit, the complaint alleges medical negligence under section 766.106(l)(a), Florida Statutes. We thus grant the petition and quash the order.
I.
The Estate filed a complaint against Shands on the heels of a tragic accident. In January 2013, more than two months *329 after Ashley Lawson had been admitted with a psychiatric condition to the locked unit at Shands Vista for safety reasons, she apparently took an employee’s unattended keys and badge and escaped the hospital. Ms. Lawson made her way onto a nearby interstate highway and into the path of a truck, which struck and killed her. The Estate subsequently sued Shands alleging ordinary negligence and disavowing medical negligence! Shands moved to dismiss, claiming that the complaint actually sounded hi medical negligence and that the Estate hadn’t complied with the mandatory presuit requirements of chapter 766. But the trial court denied Shands’ motion. It concluded that the Estate’s complaint was for ordinary negligence because of an allegation that Ms. Lawson was not receiving care or services when the breach occurred. Shands responded with a petition for writ of certio-rari seeking relief from the order denying its motion to dismiss.
II.
A.
Certiorari review of the denial of a motion to dismiss is ordinarily unavailable. Baptist Med. Ctr. of Beaches, Inc. v. Rhodin, 40 So.3d 112, 114-15 (Fla. 1st DCA 2010) (citing Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987)). But an exception applies to cases, like this one, where a defendant asserts that an order erroneously excuses a plaintiff from complying with chapter Í66’s presuit requirements. Id. Chapter 766 requires potential plaintiffs to investigate the merits of a claim- and provide notice of' intent to litigate before filing suit. Id. at 115. Where disputes arise regarding compliance with chapter 766’s requirements, “[cjertiorari review is proper to review the denial of a motion to dismiss.” Goldfarb v. Urciuoli, 858 So.2d 397, 398 (Fla. 1st DCA 2003); see also Rhodin, 40 So.3d at 115;. S. Baptist Hosp. of Fla., Inc. v. Ashe, 948 So.2d 889, 890 (Fla, 1st DCA 2007).
For a court to grant certiorari relief from the denial of a motion to dismiss, a petitioner must establish three elements: (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3)' that cannot be corrected on post-judgment appeal. Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011). As for elements (2) and (3), we have recognized that allowing noncomplying medical negligence litigation to proceed frustrates the purposes of the Medical Malpractice Reform Act and imposes material and irreparable harm to medical defendants. See Rhodin, 40 So.3d at 115; see also Holmes Reg’l Med. Ctr., Inc. v. Dumigan, 151 So.3d 1282, 1284-85 (Fla. 5th DCA 2014). As for element (1), the legal merits prong of the test, we have said an order departs from the essential requirements of chapter 766 when a respondent fails to satisfy presuit requirements before bringing a medical negligence claim. Rhodin, 40 So.3d at 115-16.
The specific presuit issue here— whether the claim sounds in medical negligence (requiring presuit compliance), or ordinary negligence (no presuit requirements) — is, a familiar one which, courts have analyzed in familiar ways under the applicable statute. See, e.g., Rhodin, 40 So.3d at 115-16; Lakeland Reg'l Med. Ctr., Inc. v. Pilgrim, 107 So.3d 505 (Fla. 2d DCA 2013); S. Miami Hosp., Inc. v. Perez, 38 So.3d 809 (Fla. 3d DCA 2010); Indian River Mem’l Hosp., Inc. v. Browne, 44 So.3d 237 (Fla. 4th DCA 2010); Dumigan, 151 So.3d 1282. “[WJhether a claimant has satisfied threshold requirements [of chapter 766], warranting denial of the defendant’s motion to dismiss, presents an issue of law.” Rhodin, 40 So.3d at 116; *330 Dirga v. Butler, 39 So.3d 388, 389 (Fla. 1st DCA 2010) (reviewing de novo whether defendants were entitled to presuit notice under chapter 766). Section 766.106(1)(a) defines a “ ‘[c]laim for medical negligence’ or ‘claim for medical malpractice’ [as] a claim, arising out of the rendering of, or the failure to render, medical care or services.” The task for the courts is to “decide from [the allegations] whether the claim arises ‘out of the rendering of, or the failure to render, medical care or services.’ ” Ashe, 948 So.2d at 890 (quoting Foshee v. Health Mgmt. Assocs., 675 So.2d 957, 959 (Fla. 5th DCA 1996) and citing other cases). See also J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 949 (Fla.1994) (describing the key inquiry as whether the complaint “arises out of any medical ... diagnosis, treatment, or care”). If we conclude that the complaint sounds in ordinary negligence, we must deny the petition. See, e.g., Ashe, 948 So.2d at 891. But if the Estate’s claim is for medical negligence, then “we must quash [the order].” Rhodin, 40 So.3d at 115.
B.
1.
The key allegations in the Estate’s complaint state:
1. This is an ordinary negligence action for which damages exceed $15,000, inclusive of interest, costs and attorneys’ fees.
2. This is not an action for medical malpractice. This is not an action for negligent psychiatric treatment, negligent psychiatric diagnosis, or negligent psychiatric care.
* * *
5. On November 1, 2012, Ashley Lawson was admitted to Shands Vista ... and primarily resided in the Florida Recovery Center facility. She remained a resident until her death on January 23, 2013.
[[Image here]]
8. Ashley Lawson (DOB 6/17/84) was admitted to [the Hospital] on November 1, 2012[,] as a psychiatric patient with a history of psychiatric illness, drug abuse, impulsive behavior, and multiple suicide attempts.
9. For her own safety, [she] was transferred to [the Hospital’s] inpatient locked unit.
10. The [Hospital] owed a legal duty to provide adequate security for [her] and other psychiatric patients who resided in the locked unit.
11. Notwithstanding the legal duty owed to Ashley Lawson, the Defendant breached its duty when its employee negligently left her keys and badge unattended and kept them unattended for an unreasonable period of time which allowed Ashley Lawson to exit the locked unit with said keys and badge.
12. At the time the employee negligently left her keys and badge unattended, the employee was not rendering medical or psychiatric care to Ashley Lawson.
13. At the- time the employee negligently left her keys and badge unattended, she was acting in the scope of her employment. *
14. As a direct and proximate result of the Defendant’s breach of its duty, Ashley Lawson impulsively eloped and made her way to the interstate in a confused condition and without any money, cell phone, or warm clothing. She was, then, struck by a tractor trailer, resulting in her death on January 23, 2012.
*331 2.
Shands argues that the trial court’s order departed from the essential -requirements of law by elevating conclusory “ordinary negligence” labels alleged in the complaint over patently conflicting fact allegations that amount to a medical negligence claim. The complaint alleges that Shands had a legal duty to confíne Ms. Lawson within the locked unit, where she had been admitted because her psychiatric condition demanded the safety and security of a “locked unit.” Shands apparently provided this 24-7 confinement service to Ms. Lawson for some two and a half months before she, “[a]s a direct and proximate cause of [Shands’] breach of its duty, ... impulsively eloped.” Despite the Estate’s disavowals of medical negligence, we agree with Shands because under § 766.106(l)(a), the harm alleged in the Complaint arose from Shands’ duty (and failure) to confine Ms. Lawson inside the hospital, which was the very service that the locked unit existed to provide. Because the breach arose from Shands’ provision, and ultimate failure, to keep Ms. Lawson confined within its locked unit, and was the service that Ms. Lawson’s condition allegedly required, we conclude that the Estate’s claim arises out of the medical care, treatment, and services provided to her for purposes of § 766.106(l)(a).
We recognize that the Estate alleged “[t]his is not an action for medical malpractice. This is not an action for negligent pisychiatric treatment, negligent psychiatric diagnosis, or negligent psychiatric care ... [and that Shands’ employee] was not rendering medical or psychiatric care to Ashley Lawson” when the breach occurred. But simply labeling allegations as “ordinary negligence” is not dispositive. Omni Healthcare, Inc. v. Moser, 106 So.3d 474, 475 (Fla. 5th DCA 2012). Courts must look beyond the legal labels urged by plaintiffs and “must[ ] apply the law to the well-pleaded factual allegations and decide the legal issue of whether the complaint sounds in simple or medical negligence.” Dr. Navarro’s Vein Ctr. of Palm Beach, Inc. v. Miller, 22 So.3d 776, 778 (Fla. 4th DCA 2009).
The trial court credited the complaint’s conclusory and internally inconsistent allegations that Ms. Lawson wasn’t receiving care at the time of the breach, but overlooked those allegations defining the breach in terms of the unit’s failure to keep her confined. Notably, the complaint set Shands’ breach in the context of allegations of (1) Ms. Lawson’s psychiatric condition, as “a psychiatric patient with a history of psychiatric illness, ... impulsive behavior, and' multiple suicide attempts,” and (2) Shands’ psychiatric care and services, stating: “For her own safety, [she] was transferred to Shands Vista’s inpatient locked unit ... [where Shands] owed a legal duty to provide adequate security for [her] and other psychiatric patients who resided in the locked unit.” The complaint then defined the harm in terms of Ms. Lawson’s poor psychiatric condition— impulsivity, mental infirmity, and suicidal tendencies — which Shands failed to keep in check: “[she] impulsively eloped and made her way to the interstate in a confused condition ... resulting in her death.”
Although courts must liberally construe, and accept as true, factual allegations in a complaint, as well as reasonable inferences therefrom, there is no obligation to accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party. W.R. Townsend Contracting, Inc. v. Jensen Civil Const. Inc., 728 So.2d 297, 300 (Fla. 1st DCA 1999) (citing Response Oncology, *332 Inc. v. Metrahealth Ins. Co., 978 F.Supp. 1052, 1058 (S.D.Fla.1997)). This rule applies to unfounded ordinary negligence claims. See South Miami Hospital, Inc. v. Perez, 38 So.3d 809, 811 (Fla. 3d DCA 2010) (rejecting an ordinary negligence claim that “flies in the face of logic”); Dr. Navarro’s Vein Centre, 22 So.3d at 778 (rejecting an ordinary negligence claim that amounted to a “creative dance around the obvious”). Here, the ordinary negligence claim cannot be taken at face value, because the breach allegedly arose from Shands’ failure in providing the signature, psychiatric service offered by its specialty “locked unit” — confinement—-which was the service that Ms. Lawson’s psychiatric condition especially required.
Furthering our view that the Estate’s claim sounds-in medical negligence is that the proof required in this case will inevitably involve the medical negligence standard of care, or “that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.” § 766.102(1), Fla. Stat. Our court said in Broadway v. Bay Hospital, Inc., 638 So.2d 176 (Fla. 1st DCA .1994), that the test for determining if presuit requirements apply is “whether the defendant is directly or vicariously hable under the medical negligence standard of care as set forth in section 766.102(1), Florida Statutes.” Now, to be sure, sqme negligence suits alleged in medical contexts don’t implicate medical standards of care. See, e.g., Quintanilla v. Coral Gables Hasp., Inc., 941 So.2d 468 (Fla. 3d DCA 2006) (spilling hot tea on a patient); Tenet St. Mary’s Inc. v. Serratore, 869 So.2d 729 (Fla. 4th DCA 2004) (inadvertently kicking a patient); Lake Shore Hosp., Inc. v. Clarke, 768 So.2d 1251 (Fla. 1st DCA 2000) (garden variety slip and fall in a hospital). Just because a negligent act occurred in a medical setting doesn’t make it medical negligence subject to chapter 766’s presuit requirements. Robinson v. W. Fla. Reg'l Med. Ctr., 675 So.2d 226, 228 (Fla. 1st DCA 1996). In Broadway, for instance, a hospital bed collapsed and injured a patient. Our court concluded that the claim sounded in ordinary negligence. 638 So.2d 176. In that situation, medical standards-of care didn’t matter when evaluating the act of offering a dangerous bed. Jurors could resolve the negligence question by referring to common experience, the same as if a hotel, cruiseline, or other bed-providing proprietor had supplied the collapsed bed.
Conversely, the claim alleged here was grounded in Shands’ duty to confine Ms. Lawson in its locked unit against her will. The Estate’s claim is not that there is a duty to constantly guard one’s keys and badge in the workplace. Rather, the complaint repeatedly highlighted the unique setting giving rise to the harm — in a “locked unit” of psychiatric patients — because it was critical to the allegations. In this special context, expert testimony is necessary to evaluate the “unattended” keys allegation' and whether Shands appropriately handled Ms. Lawson’s security. Qf., Sierra v. Associated Marine Insts., Inc., 850 So.2d 582, 586 (Fla. 2d DCA 2003) (recognizing a policy at a residential juvenile detention camp not to keep keys on one’s person, but to leave them in a locked box in an administrative office). Medical experts might address questions like:
• In a locked hospital unit confining psychiatric patients against their will, must employees’ keys and badges be kept “attended” on their person — perhaps pinned to a shirt or hanging around a neck — while caring for patients?
*333 • If acceptable security policies allow for (or' require) keys and badges to be stored away from patients and employees in a locked psychiatric unit, how are they to be stored given the wishes of some patients to escape?
• The complaint alleges that the.keys and badge were left unattended for “an unreasonable” period of time; what is a reasonable period of tim'e for an employee to leave keys and a badge unattended?
• Given Ms. Lawson’s suicidal and impulsive condition and need for locked unit, psychiatric services, did Shands act acceptably in allowing her to move about the unit, where she could obtain keys, badges, and access to exits, or was confinement to her room or bed required?
Without the help of experts to establish what is acceptable, appropriate, and prudent in this psychiatric context, jurors cannot be expected to determine through common experience whether Shands or its employee breached relevant standards. See, e.g., Robison v. Faine, 525 So.2d 903, 906 (Fla. 3d DCA 1987) (allowing medical standards of care testimony where an unwatched, suicidal patient escaped a bed restraint, exited onto the hospital’s roof, and fell); Young v. Bd. of Hosp. Dirs. of Lee Cnty., 426 So.2d 1080, 1081 (Fla. 2d DCA 1983) (tendering a physician to testify about medical care standards where a psychiatric patient escaped, ran into the streets, and was struck and injured by a car).
The Estate’s argument relies mostly on Robinson and Joseph v. University Behavioral LLC, 71 So.3d 913 (Fla. 5th DCA 2011), both of which involved physical attacks by dangerous patients in psychiatric facilities. In Robinson, the plaintiff alleged that the hospital “negligently failed to maintain the premises ... in a safe condition,” after an unsupervised patient with a violent history attacked the plaintiff while she was alone in her room. 675 So.2d at 227. Our Court considered the claim to be “in effect, a premises liability case arising out of a criminal attack by a third party,” emphasizing' that the harm was “independent of any medical diagnosis, treatment, or eare.” Id.
Joseph is similar. A patient with a violent background attacked Mr. Joseph — for the second time — after Mr. Joseph had warned the residential facility about that patient’s violent tendencies and sought to be removed from his ambit. Joseph, 71 So.3d at 919. The Fifth District also, concluded that the claim sounded in ordinary negligence, noting that “there [was] no record evidence that Joseph’s injuries resulted from any decision made in the course of Joseph’s psychiatric treatment.” Id. In both cases, the negligence allegations translated easily to non-medical contexts where an entity is sued for ignoring known dangers on its premises.
The Estate also points to our decision in Ashe, which found ordinary negligence where a psychiatric patient was released without documented approval of a psychiatrist or other approved physician, violating both “mandatory and non-discretionary requirements of Florida’s Baker Act.” 948 So.2d at 891. The neglect of legally required documentation in Ashe has little bearing on the claim here that Shands failed in its duty to keep Ms. Lawson confined.
This case more closely resembles two patient confinement cases decided by other district courts in 2010. In Perez, the Third District Court of Appeal quashed an order denying a motion to dismiss where a patient fell from a hospital bed in the critical care unit and died. 38 So.3d 809. The complaint alleged ordinary negligence because hospital employees left the patient *334 unrestrained, unattended, and unsupervised. But the district court found the claim to sound in medical negligence. It granted the hospital’s petition because the hospital’s liability “clearly ar[o]se from the rendering of, or failure to render, medical services,” determined by section 766.102’s medical standard of care. Id. at 811-12.
The Fourth District found a similar complaint to allege medical malpractice where a 76-year-old, disoriented, and confused man fell from a stretcher after being admitted to a hospital and suffered fatal head injuries. Indian River Mem’l Hosp., Inc. v. Browne, 44 So.3d 237 (Fla. 4th DCA 2010). The court held the claim to be subject to presuit requirements because it related to the hospital’s standard of care in evaluating the condition of patients and to the adequacy of the hospital’s patient-safety management procedures. The Fourth District noted that the failure to “implement adequate procedures to protect emergency room patients from falling from hospital beds” includes a medical component. Id. at 239. And it concluded that the fall.arose out of the rendering of, or the failure to render, medical care or services.
The claims in both Perez and Browne dealt with inadequately confined patients, just like the Estate’s claim here that Shands failed to keep Ms. Lawson adequately confined within the locked unit as her condition required. And the same result is called for ‘ here. We agree with these two courts that “[tjhese types of issues arise out of the rendering of, or the failure to render, medical care or services,” Browne, 44 So.3d at 239.
3.
Finally, this matter has been determined en banc in order to maintain uniformity in the court’s decisions. The three-judge panel could not reach a definitive result, with one judge favoring a return of the issue to the trial court for a motion-to-dismiss-stage evidentiary process. Shands did not request an evidentiary proceeding below and our cases have not required one, even when chapter 766 presuit-involved claims have been difficult to interpret, vague, or raised unanswered questions about whether a claim sounds in ordinary versus medical negligence. Requiring a novel evidentiary process would be a time- and resource-intensive departure both from traditional pleading standards and from the manner that trial courts have always handled these cases. Even in .Lakeland Regional Medical Center, Inc. v. Pilgrim, 107 So.3d 505, 508 (Fla. 2d DCA 2013), the decision underpinning this proposed approach, the court didn’t simply require an evidentiary process upon remand. Rather, it granted the defendant’s petition and stated that the trial court should have dismissed the complaint without prejudice so that the plaintiff could more definitively allege an ordinary negligence claim, or replead in medical negligence. Dismissal along these same lines was called for here, without resorting to a new way of handling these cases.
III.
Because the Estate’s complaint alleges medical negligence, the trial court should have granted Shands’ motion to dismiss without prejudice for the Estate- either to allege presuit compliance under chapter 766, see Hosp. Corp. of Am. v. Lindberg, 571 So.2d 446, 449 (Fla.1990), or to real-lege their theory with details manifesting an ordinary negligence claim.
The Petition is GRANTED and the order denying Shands’ motion to dismiss is QUASHED.
ROBERTS, C.J., and BENTON, LEWIS, ROWE, MARSTILLER, RAY, and WINOKUR, JJ., concur.
*335 MAKAR, J., concurs in part and dissents in part with opinion.
WOLF, J., dissents in an opinion in which THOMAS and WETHERELL, JJ., join.
SWANSON, J., dissents.in an opinion in which BILBREY, J., joins.
KELSEY, J., recused.