IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JANE DOE,

      Appellant,

v.

BAPTIST PRIMARY CARE,
INC.,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-696

Opinion filed October 12, 2015.

An appeal from the Circuit Court for Duval County.
L.P. Haddock, Judge.

Theodore S. Pina, Jr., of Nichols & Pina, LLLP, Jacksonville, for Appellant.

Franklin Duke Regan and William Tupper Stone, Jr., of Saalfield, Shad, Stokes, Inclan, Stoudemire & Stone, P.A., Jacksonville, for Appellee.

SWANSON, J.

      Appellant, Jane Doe, appeals the two final orders entered by the trial court which, taken together, result in the dismissal with prejudice of counts I and II of her amended complaint. Upon careful consideration of appellant's arguments on

appeal, as well as the allegations raised within the four corners of her complaint, we affirm the dismissal of count I, but reverse the dismissal of count II.

According to the Amended Complaint, in June 2006 appellant was diagnosed with "Human Immune-Deficiency Virus" ("HIV"). She was seen by a physician employed by appellee, Baptist Primary Care, Inc., who confirmed the diagnosis and began treatment. Appellant chose to keep the diagnosis private "in light of the social stigma which is associated with HIV." In October 2007 appellant's husband began a new job through which he and appellant obtained coverage under a group health insurance plan. As a consequence, on October 15, 2007, appellant contacted appellee to request a referral to another physician and provided appellee with her new insurance information. Appellee's employee, Melissa Cotton, was assigned the task of making the referral. Cotton was specifically instructed to make this referral as soon as possible in light of appellant's diagnosis, and was provided the new insurance information containing the name of the husband's employer. Sometime after October 15, 2007, however, Cotton disclosed to her boyfriend that appellant was HIV positive. Coincidentally, the boyfriend worked for the same employer as did the husband. Later, Cotton also disclosed appellant's medical condition to other individuals employed by the company. Then, in approximately January 2009, appellant's husband was asked by his employer to drop appellant from the group health insurance plan, but he

2

refused. Several days later, he was terminated from his employment. In approximately April 2009, Cotton's boyfriend contacted appellant's husband and disclosed to him that appellant was HIV positive.

Count I of the Amended Complaint is entitled "Violation of Privacy by Disclosure of Private Information." It alleges that Melissa Cotton, as appellee's employee, had access to confidential and private health information concerning appellant's status as being HIV positive. It further alleges that Cotton "knew, or reasonably should have known, that [appellant] expected this medical information to be kept confidential and private, absent her specific written consent," and at all material times, appellee, acting through its employee, Melissa Cotton, "had a duty pursuant to Baptist Primary Care Policies and Procedures and Florida statutory and common law to refrain from disclosing [appellant's] confidential, private, [h]ealth information without her specific, written consent." Finally, it alleges appellee breached that duty by disclosing the "confidential, private" information to members of the public "without [appellant's] specific, written, consent." The Amended Complaint additionally alleges the information was of no concern to those to whom it was disclosed "or to the public in general," was highly offensive to appellant, and, "[a]s a direct and proximate result of the disclosure, [appellant] suffered damages including mental anguish and emotional distress, embarrassment, and humiliation," which losses are "permanent or continuing[.]"

Count II is entitled "Negligent Training and Supervision," and alleges the following:

20. At all times material, Baptist Primary Care had a duty in light of the doctor-patient relationship, Florida statutory and common law and pursuant to its own policies and procedures, to prevent disclosure of [appellant's] confidential medical information without her specific, written consent.

This duty required Baptist Primary Care to ensure that its employees were properly educated, trained, and supervised in the handling of such confidential, private, health information.

21. Baptist Primary Care breached its duty to [appellant] in the following respects:

a. Negligently failing to have in place and enforce adequate and appropriate policies and procedures to ensure the protection of the confidential, private, medical information of patients, particularly those patients with HIV, including [appellant];

b. Negligently failing to provide adequate educational instruction to its employees as to the regulation and guidelines concerning disclosure of confidential, private, medical information of patients, especially those patients with HIV, including [appellant];

22. As a direct and proximate result of the negligence of Baptist Primary Care as alleged herein, [appellant's] confidential, private, medical information, was disclosed to members of the public without her consent.

23. As a direct and proximate result of the negligence of Baptist Primary Care and the disclosure of her confidential, private, medical information, [appellant] suffered damages including mental anguish and emotional distress, embarrassment, and humiliation. These losses are permanent or continuing in nature and she will suffer them in the future.

4

In response to appellee's motion to dismiss the Amended Complaint, the trial court entered a non-final order in which it dismissed count I, finding appellant had failed to state a cause of action under Florida's common law right to privacy. Nonetheless, it dismissed count I without prejudice and granted appellant twenty days within which to amend the count. The trial court dismissed count II with prejudice, however, finding the allegations sounded in medical negligence and appellant failed to comply with the statute of limitations in section 95.11(4)(b), Florida Statutes, and the pre-suit notice requirements in chapter 766, Florida Statutes. Following entry of the order of dismissal, appellant allowed the twenty-day window to amend count I to lapse and, instead, filed an appeal in this Court. Because the appeal was premature, we exercised our discretion accorded by Florida Rule of Appellate Procedure 9.110(*l*), and relinquished jurisdiction to the trial court in order "to obtain a final appealable order from the lower tribunal." During the period of relinquished jurisdiction, appellee filed a second motion again asking the court to dismiss count I, but adding a second ground urging the trial court to dismiss the count as a sanction for appellant's failure to amend it within the twenty days granted by the court. In response, appellant filed a motion to strike appellee's motion to dismiss, stating: "It is the order granting the previous Motion which needs to be amended." On March 24, 2015, the trial court acquiesced in appellee's request and entered its final Order Dismissing with Prejudice Count I of

Plaintiff's Amended Complaint as a sanction, finding appellant "knowingly failed to file an amendment to Count I of the Amended Complaint within the time the court allotted," and "offered no explanation on the record of this matter." In light of these findings, the trial court concluded "the record warrants dismissal with prejudice of Count I of the Amended Complaint, there being no sanction less severe which appears to be a viable alternative." Appellant filed the foregoing order in this Court, jurisdiction was at last properly invoked, and the parties filed their respective briefs. We now turn to resolving the two points raised on appeal by appellant.

## POINT I

Despite the trial court's explicit order dismissing count I with prejudice as a sanction for appellant's failure to amend the count, under Point I of her initial brief, appellant completely ignores the ruling and, instead, addresses the merits of the trial court's initial order dismissing the count without prejudice for failing to state a cause of action for which relief could be granted. Although, in its answer brief, appellee argues at some length its position that the trial court did not abuse its discretion in dismissing the count as a sanction, appellant chose not to file a reply brief addressing that argument.

Our exclusive duty as a court of appeal is "to determine whether the [lower tribunal] made any ruling or conducted the proceedings in a manner contrary to

6

established principles of law to the prejudice of the appellant." Fla. Dep't of Corrections v. Bradley, 510 So. 2d 1122, 1124 (Fla. 1st DCA 1987) (quoting Carolina Lumber Co. v. Daniel, 97 So. 2d 156, 158 (Fla. 1st DCA 1957)). In that respect, the decision of the trial court enjoys a presumption of correctness and the burden falls to the appellant to demonstrate error. Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979). "'An appellant who presents no argument as to why a trial court's ruling is incorrect on an issue has abandoned the issue[.]'" Davis v. State, 153 So. 3d 399, 400 (Fla. 1st DCA 2014). As the Fourth District Court of Appeal observed:

> This Court will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention. It is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, and the legal arguments supporting the positions of the respective parties. See Estate of Barret, 137 So. 2d 587 (Fla. 1st DCA 1962) and Clonts v. Spurway, 104 Fla. 340, 139 So. 896 (1932). When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy. Again, it is not the function of the Court to rebrief an appeal. We basically work within the framework of the briefs although, admittedly, there are instances where errors are so glaring or fundamental that a court will adjudicate them on its own initiative in its original opinion.

Polyglot Corp. v. Hirsch Distribs., Inc., 442 So. 2d 958, 960 (Fla. 4th DCA 1983) (on motion for rehearing). See also City of Miami v. Steckloff, 111 So. 2d 446, 447 (Fla. 1959) ("[P]oints covered by a decree of the trial court will not be

7

considered by an appellate court unless they are properly raised and discussed in the briefs."); <u>Anheuser-Busch Co. v. Staples</u>, 125 So. 3d 309, 312 (Fla. 1st DCA 2013) (holding an appellate court is "not at liberty to address issues that were not raised by the parties"); <u>David M. Dresdner, M.D., P.A. v. Charter Oaks Fire Ins. Co.</u>, 972 So. 2d 275, 281 (Fla. 2d DCA 2008) (deeming any potential issue pertaining to the final judgment for attorney's fees and costs waived or abandoned as no argument regarding the issue was made on appeal).  The fact that appellant raised her objection in her motion to strike appellee's second motion to dismiss is illuminating.  It reveals appellant was clearly on notice of how the trial court might rule in light of appellee's alternative theory for the dismissal of count I.  By her failure to address that alternative basis in Point I of her initial brief, the trial court's final order as it relates to count I stands uncontested.  In short, we hold that in light of her silence on the singular reason why the trial court dismissed count I in its final order, appellant has abandoned the argument for reversal.  Consequently, we affirm the dismissal of count I of appellant's Amended Complaint.

<em>POINT II</em>

The trial court's reasons for dismissing count II of the Amended Complaint are twofold: (1) the count is barred by the two-year statute of limitations for medical malpractice claims, and (2) appellant failed to comply with the mandatory

8

pre-suit screening requirements found in chapter 766, Florida Statutes.  Underlying those reasons is the trial court's finding that the allegations in count II

> raise issues of medical negligence, as the allegations arise out of *the receiving of medical care* and require proof that the alleged actions of [appellee] herein represented *a breach of the prevailing professional standard of care* in the hiring, training, supervision, or retention of [appellee's] employee who divulged the information to her boyfriend.

(Emphasis added.)  Under the trial court's first reason for dismissing count II, appellant was required to file her claim within the two-year statute of limitations for medical malpractice claims, as dictated by sections 95.11(4)(b) and 766.106(4), Florida Statutes.  The court, however, found more than two years had elapsed between the last alleged disclosure by the employee, Melissa Cotton, and the filing of the appellant's lawsuit.  Furthermore, the trial court ruled that appellant's failure to comply with the pre-suit screening requirements found in chapter 766, Florida Statutes, was "fatal" to her medical malpractice claim.

> When evaluating a motion to dismiss for failure to state a cause of action,

> "'the trial court must accept the allegations of the complaint as true. Likewise, the appellate court must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint.  Whether a complaint is sufficient to state a cause of action is an issue of law.  Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the *de novo* standard of review.'"

Locker v. United Pharm. Grp., Inc., 46 So. 3d 1126, 1128 (Fla. 1st DCA 2010) (quoting Brewer v. Clerk of Cir. Ct., Gadsden Cnty., 720 So. 2d 602, 603 (Fla. 1st

DCA1998), quoting <u>Sarkis v. Pafford Oil Co., Inc.</u>, 697 So. 2d 524, 526 (Fla. 1st DCA 1997)).  Appellee's motion to dismiss admitted all well-pleaded facts and all reasonable inferences that arguably arose from those facts, and the trial court could not look beyond the four corners of the complaint in deciding the motion.  <u>Stubbs v. Plantation Gen. Hosp. Ltd. P'ship</u>, 988 So. 2d 683, 684 (Fla. 4th DCA 2008).

Applying these principles to the instant order of dismissal, our singular task is to "'decide from [the allegations] whether the claim arises out of the rendering of, or the failure to render, medical care or services.'"  <u>Shands Teaching Hosp. & Clinics, Inc. v. Estate of Ashley Lawson</u>, 40 Fla. L. Weekly D2000, D2000 (Fla. 1st DCA Aug. 28, 2015) (quoting <u>Baptist Hosp. of Fla., Inc. v. Ashe</u>, 948 So. 2d 889, 890 (Fla. 1st DCA 2007)) (internal quotation marks omitted).  We are mindful in completing this task, however, of the Florida Supreme Court's cautionary rule expressed in <u>Integrated Health Care Services, Inc. v. Lang-Redway</u>, 840 So. 2d 974, 980 (Fla. 2002), wherein it emphasized that the provisions of chapter 766 "should be construed in a manner that favors access to courts.'"  <u>Id.</u> (quoting <u>Patry v. Capps</u>, 633 So. 2d 9, 13 (Fla. 1994)).

As regards the application of the statute of limitations in sections 95.11(4)(b) and 766.106(4), the supreme court in <u>J.B. v. Sacred Heart Hospital of Pensacola</u>, 635 So. 2d 945 (Fla. 1994), ruled the key inquiry is whether the action "'aris[es] out of any medical, dental, or surgical diagnosis, treatment, or care.'"  <u>Id.</u> at 947

10

(quoting § 95.11(4)(b), Fla. Stat.).  If doubt exists over the applicability of the statute, the supreme court held "the question is generally resolved in favor of the claimant."  Id.  In analyzing the statute of limitations issue in J.B., the supreme court accorded the terms, "diagnosis," "treatment," and "care," their ordinary meanings:

> "In ordinary, common parlance, the average person would understand 'diagnosis, treatment, or care' to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness.  This parallels the dictionary definitions of those terms.  According to Webster's Third International Dictionary (1981), 'diagnosis' means 'the art or act of identifying a disease from its signs and symptoms.'  'Treatment' means 'the action or manner of treating a patient medically or surgically.'  'Care' means 'provide for or attend to needs or perform necessary personal services (as for a patient or child).'  Likewise, in medical terms, 'diagnosis' means '[t]he determination of the nature of a disease.'  'Treatment' means '[m]edical or surgical management of a patient.'  And 'care' means 'the application of knowledge to the benefit of . . . [an] individual.'"

Id. at 948 (quoting Silva v. Sw. Fla. Blood Bank, Inc., 601 So. 2d 1184, 1187 (Fla. 1992)).

In J.B., J.B.'s brother, L.B., an AIDS patient, was receiving treatment from Sacred Heart Hospital in Pensacola, Florida.  According to the allegations in the complaint, the hospital was requested by its medical staff to have L.B. transferred to another treatment facility in Alabama.  Because social services were unable to provide the necessary transportation by ambulance, J.B., a layman with no medical

11

training, was contacted and agreed to drive L.B. to Alabama, all the while under the impression that L.B. was suffering from Lyme's Disease. L.B. was released to J.B.'s care with a raging fever and a heparin lock in his arm. During the trip, L.B. "'began to thrash about and accidentally dislodged the dressing to his heparin lock causing J.B. to reach over while driving in an attempt to prevent the lock from coming out of L.B.'s arm.'" J.B., 635 So. 2d at 947 (quoting the allegations in the complaint). In the process, J.B. came into contact with fluids seeping from around the lock site. J.B. subsequently contracted AIDS. He sued the hospital for negligence in arranging the transportation, "in that it knew of L.B.'s condition, the level of care that would be required in transporting him, and the risk involved[.]" Id. The questions presented to the the supreme court were whether section 95.11(4)(b) applied to bar the action, and whether chapter 766 applied to the cause of action. In deciding whether the statute of limitations in section 95.11(4)(b) applied to defeat J.B.'s claim against the hospital, the supreme court concluded that Silva v. Southwest Florida Blood Bank, Inc., was dispositive of the issue. It said:

> According to the allegations in J.B.'s complaint, at the time the Hospital contacted him to drive his brother to Alabama, J.B. had no medical condition for which he sought medical services at the Hospital. His injury arose solely through the Hospital's use of him as a transporter. The simple question we must decide is whether this injury arose from the Hospital's *medical diagnosis, treatment, or care of J.B.* Applying the law as set forth in Silva, we conclude that it did not. Accordingly, this suit is not a medical malpractice action for chapter 95 purposes and the two-year statute of limitations is inapplicable.

12

Id. (emphasis added).

As for the applicability of chapter 766, the supreme court read section 766.106(1)(a), Florida Statutes (defining a claim for medical negligence), and section 766.202, Florida Statutes (defining "medical negligence" as "medical malpractice"), "in conjunction" and concluded "chapter 766's notice and presuit screening requirements apply to claims that 'aris[e] out of the rendering of, or the failure to render, medical care or services.'" Id. at 949 (citing section 766.106(1)(a)). Looking to the allegations in the complaint, the supreme court noted J.B. claimed the hospital was negligent in using him to transport his brother. It observed the complaint "does not allege that the Hospital was negligent in any way in the rendering of, or the failure to render, medical care or services to J.B." Id. Accordingly, it concluded the complaint did not "state a medical malpractice claim for chapter 766 purposes, and the notice and presuit screening requirements [were] inapplicable." Id.

Applying the supreme court's rationale expressed in J.B. to the Amended Complaint in the present case, and taking as true the well-pleaded allegations set forth therein, we conclude that appellant's claimed injury allegedly caused by the divulgence of medical information by appellee's employee to third parties did not stem from appellee's provision of a medical diagnosis, treatment, or care to appellant, but from simple negligence. See Bell v. Indian River Mem'l Hosp., 778

13

So. 2d 1030, 1033-34 (Fla. 4th DCA 2001) (citing J.B.); Lynn v. Mount Sinai Med. Ctr., Inc., 692 So. 2d 1002, 1003 (Fla. 3d DCA 1997) (explaining that "[m]erely because a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice," and concluding "[t]he wrongful act must be directly related to the improper application of medical services, and the use of professional judgment or skill"); Liles v. P.I.A. Medfield, Inc., 681 So. 2d 711, 712 (Fla. 2d DCA 1995) (holding "not every wrongful act by a health care provider amounts to medical malpractice"); Stackhouse v. Emerson, 611 So. 2d 1365 (Fla. 5th DCA 1993) (ruling that a plaintiff was entitled to plead claims of intentional torts unrelated to, or independent of, medical diagnosis, care or treatment). Thus, appellant's complaint, likewise, does not state a cause of action for medical malpractice, and neither the two-year statute of limitations period in section 95.11(4)(b), nor the pre-suit notice requirement in chapter 766 apply to defeat appellant's claim.

We further conclude that our recent en banc decision in Shands Teaching Hospital & Clinics, Inc. v. Estate of Ashley Lawson does not persuade us to hold otherwise. In Shands, the deceased patient had been receiving psychiatric treatment from the hospital in a manner directly calculated to keep her in a locked unit, which was "*the* service that Ms. Lawson's condition allegedly required." 40 Fla. L. Weekly at D2001 (emphasis in original). Thus, contrary to the explicit

14

allegations in the complaint claiming the action was <u>not</u> one for medical negligence, we stressed that courts "must look beyond legal labels urged by plaintiffs and 'must[] apply the law to the well-pleaded factual allegations and decide the legal issue of whether the complaint sounds in simple or medical negligence.'" <u>Id.</u> (quoting <u>Dr. Navarro's Vein Ctr. of Palm Beach, Inc. v. Miller,</u> 22 So. 3d 776, 778 (Fla. 4th DCA 2009)). In contrast, in the present case, we are presented with no "legal labels." The alleged history of past medical treatment that had been provided to appellant by appellee does not serve to define the alleged negligent acts of appellee's employee.

This is not a case where "the factual allegations belie the conclusory legal allegations." <u>Dr. Navarro's Vein Ctr. of Palm Beach, Inc. v. Miller,</u> 22 So. 3d at 778. Nor is it a case where the factual allegations suggest any "medical skill or judgment" was exercised by appellee in training its employees not to disseminate its patients' medical conditions to the public. Rather, we conclude this case belongs to the category of cases recognized in <u>Shands</u> as not implicating medical standards of care. <u>See</u>, <u>e.g.</u>, <u>Quintanilla v. Coral Gables Hosp., Inc.</u>, 941 So. 2d 468 (Fla. 3d DCA 2006) (involving the spilling of hot tea on a patient); <u>Tenet St. Mary's Inc. v. Serratore</u>, 869 So. 2d 729 (Fla. 4th DCA 2004) (considering the allegation of the inadvertent kicking of a patient); <u>Lake Shore Hosp., Inc. v. Clarke</u>, 768 So. 2d 1251 (Fla. 1st DCA 2000) (involving a slip and fall injury in the

15

hospital); but cf. Palms W. Hosp. Ltd. P'ship v. Burns, 83 So. 3d 785 (Fla. 4th DCA 2011), rev. dismissed, 139 So. 3d 867 (Fla. 2014) (holding the trial court departed from the essential requirements of the law in denying the hospital's motion to dismiss where the choice of the hospital's physicians not to treat the plaintiff in the emergency room, which choice allegedly caused the plaintiff's death, called up the standard of care involved in the hospital's evaluation and treatment of the plaintiff and, therefore, the complaint stated a cause of action for medical malpractice). As we stressed in Shands, in those situations presented in the above-cited cases, "medical standards of care didn't matter," and "[j]urors could resolve the negligence question by referring to common experience[.]" 40 Fla. L. Weekly at D2001. The same can be said of the instant case. Consequently, we hold this is not a medical malpractice case and the trial court erred in dismissing count II of the Amended Complaint.

AFFIRMED, in part, REVERSED, in part, and REMANDED for further proceedings consistent with this opinion.

OSTERHAUS and KELSEY, JJ., CONCUR.

16